A. S. GARDNER AND WIFE, GUARDIANS, ETC., V. J. D. STELL
AND ANOTHER.

1. The legal effect of a deed is matter for the determination of the court, and
not the jury; and when there is no such ambiguity in a deed as would
require parol explanation, the jury have nothing to do with its con-
struction.

2. Whether the deed was taken in the names of other persons than the pur-
chaser for the purpose of defrauding the latter's creditors is matter of
fact, for the determination of a jury; and if such was its purpose, ad-
vantage of it can be taken by those only who are creditors of the
purchaser.

ERROR from Leon. Tried below before the Hon. John Gregg.
The case is stated in the opinion of the court.

*Hancock & West*, for the plaintiffs in error.—There is but one
single point in this case now properly before the court for revis-
ion, and that is the first clause of the judge's charge.

It will not, therefore, be necessary to state any other portion of
the record, than so much as will set this charge in its proper light.

In 1849 Josephus Moore, who at the time had married a second
wife (who was then living, named Mary Jane), and who had by
his first wife, deceased, three children, Martin, Jesse, and Martha,
purchased (or at least did the trading), the tract of land in suit,
of Riley B. Wallace; and the deed was made in the names of
Jesse C. (his son by his first wife), and Mary Jane, his second
wife.

There is some dispute about who paid the purchase money.
One of the witnesses swears that Jesse and Josephus each paid a
part; at all events it was paid.

The defendants plead, first, that Josephus paid all the purchase
money; and then, not liking the position that brought them in,
they reversed their position and pleaded that Jesse paid all the
money.

Let it be remembered that the plaintiffs sue as the heirs of Mary Jane Moore, and sue neither as the heirs of Jesse or Josephus, though the proof shows that the plaintiffs are in fact not only the heirs of Mary Jane, but also of Josephus and Jesse.

In 1850 Jesse died, and in 1852 Mary Jane died, and in 1853 Josephus died. There never was any administration, either on Josephus or Mary Jane's estate. Jesse made a will, and in it he expressly recognized Mary Jane's interest in the *locus in quo*, by devising to his brother Martin "my portion" of the land in question. It is clear, then, from the evidence, that whether the land was bought by Jesse alone, or by Josephus alone, or by Jesse and Josephus jointly, that they both recognized an interest in the land in Mary Jane. Josephus did so by having the deed made to her. Jesse did so by consenting, through life, to hold it as co-tenant with her, and by his dying recognition of her claim in his will.

We say, then, nothing can be clearer under the evidence than that an interest in the land vested in Mary Jane. Whether it was her separate property, or community property of her and Josephus, it is not necessary here now to inquire.

After the death of Jesse, Mary Jane and Josephus, Martin (who was executor and devisee under Jesse) sold the *locus in quo* to Duren.

The court must see that this sale could only pass Jesse's interest and estate in the land. It could not possibly affect the interest of the heirs of Mary Jane, for Martin (being her stepson) was neither her heir or executor, and had no control over her estate. Again, in October, 1853, Martin and Martha J. (both stepchildren of Mary Jane, and not her heirs), sold the *locus in quo* to Duren, under whom defendants claim.

This title clearly could not pass the title of Mary Jane, or divest her heirs of their interest. But the court below charged differently. *Hinc illæ lachrymæ*, and this writ of error and

brief. In short we say that Martin and Martha Jane could not pass any more title to the purchaser than they themselves had.

No brief for the defendants in error has reached the Reporter.

WALKER, J.—This was an action of trespass to try title, and for partition, brought by appellants as the guardians of John D., Mary D., Jennette, and Sarah Moore. The plaintiffs claim title in their wards, as heirs at law of their mother, Mary Jane Moore, deceased, to an undivided one-half of the south half of a third of a league of land in Leon county, the headright of James W. Doss, as tenants in common with the defendant, John D. Stell.

Josephus Moore, the father of these wards, had, by his first wife, three children, Martin H., Jesse C., and Martha J. Moore. After the death of his first wife he married again, and by the second marriage had four children, the wards of the plaintiffs.

In 1849, during the lifetime of his second wife, Mary Jane, he bargained for the land in question with one Wiley B. Wallace, and Wallace conveyed the same, by deed, to Moore's wife, Mary Jane, and to Jesse C., his son by his first marriage.

In 1850, Jesse C. Moore died, leaving a will, by which he devised to his brother Martin H. his (Jesse C.'s) portion of the land.

In 1852 Mary Jane died, leaving four children, the wards of the plaintiffs.

In 1853 Josephus Moore died, leaving, surviving him, the four children of Mary Jane, and also Martin H. and Martha J., issue of his first marriage.

In October, 1853, after the death of Josephus, Martin H. and Martha J. Moore (the said Martin H. acting for himself, and as administrator of the estate of his brother Jesse C.) conveyed the land, by deed, to Jesse Duren.

In January, 1854, Martin H. Moore executed to Duren another deed to the same land.

The defendant Stell claims under Duren. The cause was tried in the court below at the Fall term, 1859; verdict and judgment were rendered for the defendants, and the plaintiffs appealed.

The judge below, in his charge, uses the following language: "The jury are instructed that the first question they will decide in this case is, whether or not the deed executed by Martin H. Moore, separately, and Martin H. Moore and Martha J. Moore in connection, were intended to convey the land in controversy. If they were so intended, they convey the entire interest in the land."

This charge was manifestly erroneous. The deed from Wallace to Mary Jane and Jesse C. Moore made them tenants in common in the land; and Jesse C., by his will, conveyed his interest only to his brother, Martin H. The interest of Mary Jane descended to her children, and the court should so have instructed the jury.

The legal effect of a deed is matter for the determination of the court; and where there is no such ambiguity as would require parol explanations, the jury have nothing to do with the construction of deeds.

Upon the supposition that the interest of Mary Jane Moore in the land in equity belonged to herself and her husband Josephus, whatever interest he had would, at his death, descend to his children, share and share alike; and the deed of Martin H. and Martha J. would convey no more than their own interests, and the interests devised by Jesse C. to Martin H.

Upon a proper determination of the facts by the jury, the court will find no difficulty in applying the law of the case.

There is some claim that the deed from Wallace to Mary Jane and Jesse C. Moore was made to defraud the creditors of Josephus. This is matter of fact to be determined by the jury, and, if found to be true, only those who were creditors of Josephus Moore can be allowed to take advantage of it.

The judgment of the district court is reversed and the cause remanded, to be proceeded in in accordance with this opinion.

Reversed and remanded.