HOUSTON & T. C. R. R. CO. V. WM. C. McKINNEY.

(Case No. 2624.)

1. PRINCIPAL AND AGENT.— The agent of a railway company, acting under a general power to procure a right of way for the railroad, does not have, as connected with or incidental to such a power, the right to designate and locate for his principals the depots along the line of road; and his agreement to locate a depot at a particular place, as a consideration for a deed to the company of a right of way, would not be binding on the company.

2. DAMAGES.— An incorporated company cannot be called on to answer in damages, in its corporate capacity, for the false and fraudulent representations of its agent, unless it authorized the representations.

3. DEED — PRINCIPAL AND AGENT.— A deed to a railway company which recited that, "in consideration of the enhanced value to be given and is contemplated to arise to my lands and other property by the location and building of the Houston & T. C. Railway, and for the further consideration of one dollar," and then proceeded to convey the right of way for the road over designated land, vested the right it purported to convey, notwithstanding fraudulent representations made outside the scope of his authority by the agent who received it. If the agent promised the location of a depot as a part consideration for the deed, parol evidence would not, in a suit against the company, be admitted to prove it, and the remedy of the grantor would be against the agent and not against the company for the deceit practiced.

4. DISTINGUISHED.— This case distinguished from Henderson v. R. R. Co., 17 Tex., 560.

5. DAMAGES.— One who, by deed, grants a right of way over his land to a railway company, impliedly waives all right to damages not reserved in the deed, occasioned by the removal of timber or other obstructions situated in the line of the designated right of way.

6. MEASURE OF DAMAGES — PLEADING.— See statement and opinion for a petition in a suit against a railway company for damages, on account of alleged fraudulent representations by its agent, which was held bad on demurrer

APPEAL from Collin.   Tried below before the Hon. W. H. Andrews.

W. C. McKinney brought this suit for the cancellation of a deed which he made, conveying the right of way over a certain tract of land to the appellant, on the allega-

tion of fraudulent representations and undertakings of the appellant's agent, who solicited from him the deed, and was at the time acting as the appellant's agent to procure rights of way for its railroad; also for damages for the breach of the stipulation of the agreement, made as a consideration and as alleged sole inducement for giving the right of way without adequate compensation. Verdict and judgment for the plaintiff, cancelling the deed, and for damages in the sum of $2,750. The court decreed the land condemned to the defendant's right of way.

McKinney, on the 16th day of April, A. D. 1872, executed and delivered to the appellant a deed, signed by himself and wife, of which the following is a copy:

"The State of Texas.

" Know all men by these presents: That for and in consideration of the enhanced value to be given and is contemplated to arise to my lands and other property by the location and building of the Houston & Texas Central Railway, and for the further consideration of one dollar to me in hand paid, the receipt whereof is hereby acknowledged, W. C. McKinney and Margaret McKinney, of the county of Collin and state of Texas, have granted, bargained, sold and released, and by these presents do grant, bargain, sell and release, to the Houston & Texas Central Railway Company, a strip of one hundred feet in width of land over the tracts of land particularly described as follows, viz.: A tract in Collin county known as a survey in name of S. C. Brantley, for six hundred and forty acres, except fifty acres out of the southeast corner now owned by Sarilda Dooley.   .   .   .

" It is understood that all the timber on the land conveyed is reserved over and upon which the said company has built or may hereafter build its railroad, and also the right to have the same strip of land in width over and upon any other lands now owned or which may hereafter be owned by us in the state through which said railroad may be

hereafter built, together with all and singular the rights, members, hereditaments and appurtenances to the same belonging, or in anywise incident or appertaining. To have and to hold, all and singular, the said premises unto the said Houston & Texas Central Railway Company or its assigns forever.

"And for the consideration aforesaid, as herein set forth, we do hereby grant to said company such earth, material and rock as may be found on our lands herein conveyed which may be required for the construction of said railroad, and we do hereby grant to said company a full release from all claims against said company for damages that may be sustained by their work in the construction, and for the right of way of said railroad over any of the said lands. This 16th April, 1872.

(Signed)          "WM. C. McKinney,<br>
"Margaret McKinney."

The deed was acknowledged and recorded.

The appellant built and constructed the line of its road over the tract of land without any objection.

McKinney alleged that "one Cummins, who was at that time the agent of defendant, for the purpose of procuring the right of way for their said railroad, assured him (appellee) that if he would make said deed to defendant (appellant) that defendant would establish and erect a depot within one and a quarter miles of the said town of Mantua; accordingly plaintiff (appellee), relying on the assurances of defendant's (appellant's) said agent that defendant would establish said depot as aforesaid, did, on or about the 16th day of April, A. D. 1872, make and deliver" said deed.

That "the real consideration, though not expressed therein, was that defendant would establish and erect a depot in Collin county within one and one-half miles of said town of Mantua, on the line of defendant's railway. Plaintiff further represents that the representations of

defendant's said agent, as heretofore stated, were fraudu-
lently made, with a view to induce plaintiff to make a
deed to defendant to the right of way over his said land.
That plaintiff put full trust and confidence in said repre-
sentations, believed them to be true in every particular,
that said agent had full authority to make them, and
that defendant would ratify said agreement between
plaintiff and said Cummins, and that but for the repre-
sentations so made to plaintiff, as heretofore stated, he
would never have made the deed to the right of way over
said tract of land."

That "said deed was prepared by said agent, and said
stipulations and conditions designedly left out of said
deed for the purpose of defrauding plaintiff out of his
said land. That plaintiff was without counsel and unad-
vised as to the legal effect of said deed."

That "plaintiff, though often requested, has failed and
refused to establish a depot within one and one-half miles
of the town of Mantua, but have long since refused to do
so; and have in fact established a depot at Van Alstyne,
in Grayson county, a distance of two and one-half or
three miles from said town of Mantua."

"That defendant, in constructing said road, cut down
and destroyed a bois d'arc hedge about eighty rods in
length, the property of plaintiff, of the value of $300."

"The plaintiff alleged that he had sustained damages
by reason of the construction of said railway over his
tract of land in the sum of $4,000," for which he sued.

To this the defendant filed a general demurrer and de-
nial, and pleaded specially, "that plaintiff did, on the 16th
day of April, A. D. 1872, make, execute and deliver to
defendants, as alleged in his petition, he being then and
there joined by his wife, Margaret McKinney, a deed to
the right of way over and upon the tract of land de-
scribed in his said petition, one hundred feet in width,
thereby releasing to defendants all damages that might

be sustained by them in their work in the construction of their road over and upon said land; said deed was made, executed and delivered for a valuable consideration, and is herewith filed, marked A, and made a part hereof. Wherefore they say that plaintiffs are estopped.

'Defendants further allege that W. F. Cummins was not at the time alleged in plaintiff's petition, nor ever was, their agent, authorized to locate and establish depots on the line of their said road, or enter into contracts with any person for the location or establishment of depots on said line of road. And if said Cummins did, as alleged in plaintiff's petition, represent to plaintiff that defendants would locate a depot in Collin county within one and one-half miles of the town of Mantua, in said county, and thereby induced plaintiff to execute the deed aforesaid, that the same was not expressed in said deed, and never was brought to the knowledge of defendants, and never ratified either in whole or in part by them. Defendants further allege that if said representations were made as aforesaid by said Cummins to plaintiff, then said representations were made without authority from defendants and without their knowledge or consent, and had not been brought to their knowledge before the institution of this suit."

The testimony on the trial was voluminous, and, in view of the opinion, need not be referred to. The demurrer of appellant was overruled, and the charges of the court, which held the company liable for representations in regard to locating a depot, made by its right-of-way agent, are omitted:

*Goldthwaite & Turner*, for appellant.

*Richard Maltbie* and *S. Hare*, for appellee.

I. As the general demurrer admits all the allegations in petition, we do not consider an argument necessary to

establish the correctness of the ruling of the court below
on this point.   If the deed was obtained from appellee
by fraud and without consideration, and appellant de-
stroyed appellee's hedge, which was not included in the
deed, are not sufficient allegations under a general de-
murrer, no reasons we could give would strengthen the
petition — hence we submit it as good on general demurrer.
That the facts set out in petition constitute a good cause
of action.   See statement of facts in More *v*. Brown, in
connection with the opinion, 15 Tex., 129 *et seq.*, and
Henderson *v*. The Railroad Company, 17 Tex., 560 *et seq.*

II.  Upon the pleadings and evidence, and in support of
the charges asked and given for appellee, and asked and
refused for appellant, we respectfully refer to the follow-
ing authorities: Story on Agency (7th ed.), pp. 295, 296,
par. 253; id., pp. 574–577, and note at the bottom of page,
par. 455; Kerr on Fraud and Mistake, pp. 15, 16; Gibson
*v*. Fifer, 21 Tex., 263; Mead *v*. Randolph, 8 Tex., 191;
McClary *v*. Floyd, 10 Tex., 189.   We especially refer to
the case of Henderson *v*. The Railroad, 17 Tex., 560 *et
seq.*, as having determined all the questions raised in this
record in favor of appellee.

WALKER, P. J. COM. APP.—We will consider, first, the
appellant's second assignment of error, that the court
erred in overruling the demurrer to plaintiff's petition.
The suit is not brought to rescind the contract which was
made, for, notwithstanding the petition prays for cancel-
lation of the deed, it prays that the same right of way
conveyed by it to defendant be confirmed by a decree con-
demning the said land to the defendant's use and benefit.
A condemnation of land to a railway company's right of
way, over and through the land, by a decree of court,
vests the same right as that which the deed contemplated
by its terms and legal effect.   The relief sought by the
petition is for the damages which are alleged to have re-

sulted from the false and fraudulent representations made by an agent of the defendant in a matter which, as alleged, materially influenced and induced the plaintiff to consent to convey to the defendant a right of way over his land; and also for trespasses alleged to have been committed by the d fendant on plaintiff's land, and for the damages incidental to and consequent upon the defendant's railway passing through his land.

As the plaintiff does not sue for a rescission of the contract, and, on the contrary, virtually asks that it be confirmed as to the conveyance which he has made, but seeks for damages, by reason of the facts stated in his petition, against the defendant, it is essential, to entitle him to a recovery, that he shall show that he has contracted with such an agent of the defendant, so as that the acts and declarations done and made by him are binding upon the defendant; or, in other words, whether the principal has expressly or impliedly authorized the agent to make said representations.   It is also essential that the facts alleged as the basis for damages shall be such as will entitle the plaintiff to the damages claimed for the misrepresentations complained of.

The plaintiff alleges "that, on or about the —— day of ——, 1872, defendant was engaged in constructing its railway through the county of Collin, and were desirous to construct their road over and across plaintiff's said tract of land.   That plaintiff greatly desired that defendant would establish and erect on the line of their said railway a depot within a distance of one and one-half miles of the town of Mantua, and that plaintiff, in pursuance of said desire, proposed to one Cummins, on the —— day of ——, 1872, who was at that time the agent of defendant for the purpose of obtaining the right of way for their said railway, that if defendant would establish and erect a depot on the line of their said railway within a distance of one and one-half miles of said town

of Mantua, and in Collin county, that plaintiff would make a deed to defendant to the right of way over his said tract of land.

The petition alleged that said agent agreed to, and accepted, said proposition, "and assured him (plaintiff) that if he would make said deed to defendant, that defendant would establish and erect a depot within one and a quarter miles of the said town of Mantua." That the plaintiff, relying on the assurances of defendant's said agent that defendant would establish said depot as aforesaid, did, on or about the 16th day of April, 1872, make and deliver a deed to said agent for the defendant to the right of way through his said tract of land.

The petition further alleges that the aforesaid representations of the defendant's agent were fraudulently made, with a view to induce plaintiff to make the said deed; that he placed full trust and confidence in their truth, and believed that said agent had full authority to make them, and that the defendant would ratify the agreement between the plaintiff and said Cummins. That without said representations, so made, he would not have made the deed to the right of way.

The averments of the petition, just stated, represent the transaction to which they relate to have been with an agent of the defendant. His authority is defined in the petition to be for a single purpose, which was that of obtaining the right of way for the defendant's railway. His authority to bind his principal was limited to the particular business within the scope of his peculiar agency, and the plaintiff in his petition defined the scope and limit of it. Such an authority as that ascribed to the agent imports the exercise by him of the necessary and usual powers, in the ordinary course of business, to thus procure the right of way for a railway through the lands of others. "The authority given under a general agency embraces the appropriate means to accomplish

the desired end; every such authority carries with it, or includes in it, as an incident, all the powers which are necessary, or proper, or usual, as means to effectuate the purposes for which it was created." Story on Agency, § 97.

But the rule which thus confers by implication such incidental power, limits the delegated power to the line which it thus draws. That which is not necessary, proper, nor usual, as incidents to the performance of the acts authorized to be done under the general power, is in excess of and beyond the power delegated by the principal to the agent. Thus, "an agent, authorized to receive payment, has not an unlimited authority to receive it in any mode which he may choose; but he is ordinarily deemed entrusted with the power to receive it in money only. An agent employed to receive payment is not, unless some special authority is given to him, clothed with authority to commute the debt for another thing; or to compound the debt; or to release it upon a composition; or to pledge a note received for the debt, or the money when received; or to submit the debt or demand to arbitration." Story on Agency, § 99.

As a matter of law, it does not appear what particular acts of such an agent as Cummins was alleged to have been would have been usual, necessary or proper, in the ordinary course of that business, of the procurement of the right of way; but as a matter of law, it does appear that the establishment and erection of depots by railway companies is a separate and distinct kind of business or transaction, and different in its nature from contracts for the right of way. An agent clothed with the bare authority to procure rights of way would not have, as connected with or incidental to such a power, the right to locate and designate for his principal the depots along the line of his road. Such an authority would be foreign to, and not within the scope of, his agency, nor would he be

acting within it, when he should undertake to stipulate, in behalf of, and to bind his principal, as a condition for a deed to right of way, that a depot should be established at a given or specified place.

"To procure a right of way" would seem to involve the idea of authority to solicit and obtain such right from the proprietors of the soil, in the modes that are customary and usual to the acquisition of property of like character, such as would pertain to obtaining other like easements, viz., by purchase and sale for a pecuniary equivalent; or else, where the right which is solicited is one of mutual advantage to both parties, by gift or donation. But in the absence of averment of other authority or greater power than would be incident to the grant of a mere naked power to an agent to procure for the principal such a right or such an estate, it would not be inferred that the agent was empowered thereby to stipulate for other acts to be done by the principal as a consideration for the grant of the right of way, than to pay an equivalent for the same, or else to receive the same on less onerous terms.

The converse of this proposition would be to invest the agent with the authority to offer as an inducement for making a contract thus to procure the right, the obligation of the principal to surrender as an equivalent any right or power which it possessed, connected with the building or the operation of its road, according to the judgment or discretion of the agent. The right given to an agent, holding himself out to the world as such, to acquire property in lands, or rights therein like this, does not import, without a further delegation of specific authority, the right to transfer and thereby absorb the rights of his principal in other property, or to the performance of acts to be designated by the agent.

The cases which illustrate the application of the principle limiting the authority of a general agent are very

numerous.   See Martin *v.* Farnsworth, 49 N. Y. (4 Sick.), 555; Rossiter *v.* Rossiter, 8 Wend., 494; Holtsinger *v.* National Com. Exch. Bank, 37 How., 203; Stephenson *v.* N. Y. & Hudson R. R. Co., 2 Duer, 341; Geiger *v.* Balles, 1 N. Y. S. C. (T. & C.), 129; 3 Bosw., 578, 584; 37 Tex., 19; Reese *v.* Medlock, 27 Tex., 120; Watson *v.* Hopkins, id., 637; Michigan, etc., R. R. Co. *v.* Gongas, 55 Ill., 503; Duffy *v.* Hobson, 40 Cal., 240; 3 Head (Tenn.), 619.

This, then, being like an action of deceit, as it would be termed at common law, and not to rescind the contract, the plaintiff, to maintain it, for the breach of its terms, must rely upon the binding obligation which the alleged promise of Cummins imposed upon the defendant.   It is laid down that, "to found an action of deceit, the fraud must be a personal one on the part of the person making the representation, or some fraud which another person has impliedly authorized him to be guilty of. An action of deceit cannot be brought against a principal for the fraudulent representations of his agent, unless he has impliedly authorized him to make the representations. An incorporated company cannot, therefore, in its corporate capacity, be called upon to answer in an action of deceit for false representations made by its directors, unless they have authorized the representations.   The company cannot be sued as wrongdoers by imputing to them the misconduct of those whom they have employed.   An action of deceit may be maintained against the directors personally, but not against the company."   Bump on Frauds, 326.

There is no other fraud charged in the petition on which to found the action for damages, except the representations of Cummins.   Whilst the plaintiff alleges, it is true, that the deed was prepared by Cummins, and the real inducements and stipulations were fraudulently omitted from its recitals, yet he does not allege that any imposition was practiced upon him to conceal from him

its real contents, nor that he was in fact ignorant thereof; nor that he signed it supposing that it contained anything more or less than it did in fact recite.

The deed, then, not being invalid for fraud in its execution and delivery, it must be deemed to speak the real intent of the plaintiff as therein recited, for the purposes of a conveyance of the right; nor will parol evidence be allowed to contradict or vary it, so as to impugn or affect the grantor's acknowledgment of a valuable consideration. It purported to convey for a valuable consideration, and acknowledged that a part of it consisted of advantages which he contemplated to result to him in the enhanced value to be given to his lands and other property by the location and building of the said railroad on his land. It passed the title which it purported to convey, and his petition admits that he well knew that Cummins was authorized to contract with him to the extent certainly of accepting for the defendants this deed. This transaction was complete, and the plaintiff does not seek to rescind it; his cause of action, if any he has, rests upon inducements which he alleges were held out by Cummins, consisting of a consideration not essential to support the validity of the deed, unless the promise of Cummins was made under circumstances which would be binding on the defendant. We have shown, we think, that whatever claim for damages the plaintiff may have against Cummins, none exists against defendant. Counsel, in their brief for the appellee, rely on the case of Henderson v. R. R. Co., 17 Tex., 560. We do not think that the rules of law applied there to the principal, for the unauthorized acts of his agent, have application to the facts of this case. Here the agent was not acting within the scope of his authority when he undertook to stipulate for the locality of a depot, but he was so acting in accepting a deed for the right of way. In that case the suit was to nullify a contract which was adopted and acted

upon by the principal; in this case it is not alleged that the principal knew of the promise of the agent, nor that he ever ratified it.  That was a suit to annul; this is founded on the promise made by an agent for the performance of an act outside the scope of his authority, and asks for damages for its breach.  The doctrine of estoppel by conduct applies in that, but not necessarily in this case.

If, however, the deed had contained the stipulation that the railway company should erect a depot within the limits indicated, and it had been accepted by the defendant as the act of their agent, fully empowered to accept a deed of that character, it would seem, on the principles and rules of the common law applicable to conditional estates, that the condition being a condition subsequent, and that from the nature of the subject matter of the conveyance, and the policy of the law which gives to railway companies the right of way over the lands of others on making compensation therefor, that the estate granted would have become absolute.  See secs. 6 and 7, 2 Washb. on Real Prop., pp. 6 and 7 (* pp. 447–8).  The law would not vainly permit the grantor, for condition broken, it would seem, to enter upon the land and determine the estate granted, when the grantee would be entitled, *eo instante*, to demand a right of way over the same identical land on making compensation therefor; the optional right of the grantee, on making proper compensation, would be paramount to the grantor's right in the fee, *ab initio*.  And, besides, the terms of the condition implies that the building of a depot may succeed the expenditure by the grantee of large sums of money in constructing a road, which, when laid down, becomes permanently attached to the realty; the value of which is immensely greater than the land over which it runs; and the relation of the fractional part of the road running over the land in question to the entire road beyond

the section referred to, repels the idea of a literal rescission of the contract, by any attempt of a court to place the parties in *statu quo*. The result would seem to follow that the estate conveyed would be absolute, and that the application of the rules of law ordinarily governing the rescission of contracts, oftentimes could not have application to railway companies under such circumstances, and the only remedy, or redress given, would be in damages. These remarks are suggested in view of the decree which was rendered below, cancelling the deed and condemning the land to the use of the defendant. If the plaintiff is entitled neither to annul the deed for fraud in its execution and delivery, and seeks not to divest the defendant of the right conveyed by the right of way, but asks even that it shall be decreed to defendant's use and benefit, we do not think that the court can properly cancel the contract of the parties by substituting in lieu thereof the statutory right of way as a set-off to the plaintiff's damages.

If the plaintiff was entitled to an action for damages, the measure of them is not, we think, that claimed by the petition, and which was adopted as correct in the charge of the court. The plaintiff claims as damages the diminished value of his land; damage consequent upon the construction of the road through his farm, necessitating additional fencing, and other agricultural losses and inconveniences, specified in the petition; and damage done by defendant in cutting down a bois d'arc hedge. Thus, the defendant is sought to be treated as a mere trespasser, and its liability for damages measured accordingly; as if the acts complained of were done under no color of authority, nor in anywise mitigated by reason of contract or consent given by the plaintiff. Under the state's right of eminent domain, the railway company had rights, at the time of selecting the way of its road, which enabled it to avoid being placed in the position of a tres-

passer *ex post facto*, or by construction, and to be subjected to the liabilities of such.   Railroad companies, failing to agree with owners of land as to obtaining right of way, were allowed heretofore, as now (Pasch. Dig., art. 4922), to designate the land over which they proposed to build, and to cause to be *then* determined, *in limine*, by legal proceedings, the damages "that may be caused to the lands and property of the owner by the construction of said railroad."   The owner was correspondingly protected in his rights, in that no railroad company was permitted to enter upon his land, except for a lineal survey, until the proper and legal adjustment of his rights to compensation under the proceedings contemplated under art. 4922, Pasch. Dig.   The plaintiff's petition plainly shows that the defendant entered upon his land, and constructed their road through it, with his knowledge, and that he consented thereto without any compensation, other than the anticipated advantage to result by the enhanced value to be given to his property by its construction, and the building of a depot at a certain place, or rather within the limits of a certain designated line upon the railroad. The action of the plaintiff under his proposition to Cummins waived his right to a claim for the assessment, in advance of defendant's entry and appropriation of the use of the land, of damages caused by the construction of the road on his land; but if, under a contract of that kind, binding on both parties, the railroad had erected their depot at a greater distance from the town of Mantua than was stipulated, it would have been a breach of contract, entitling the plaintiff to recover the damages which the plaintiff would have sustained, immediately resulting from the breach of that condition.

Mr. Sedgwick, in his treatise on the Measure of Damages, vol. 1, 7th ed., 212, says, that in actions " where the contract is to do, or to refrain from doing, some particular thing, the rule of the civil law is perhaps the best that

can be adopted; that the party in default shall be held liable for all losses that may be fairly considered as having been in the contemplation of the parties at the time the agreement was entered into. Or, in other words, where it appears, or may fairly be inferred, that the party complaining of the non-performance of a contract has, at the time it was entered into, turned the mind of the party whose conduct is complained of to the consequences likely to ensue from default on his part, and such consequences do ensue, he shall be held responsible for them as having stipulated against them."

The allegations of the plaintiff's petition do not imply that any other consideration influenced the plaintiff in insisting upon the locality of the depot within a mile and a half of the town of Mantua than considerations of convenience and economy to himself in the use which the road would afford him, in view of his proximity to the point indicated, for purposes of transportation of persons and freight; nor that the proposal made to Cummins was by him understood in a different light. The plaintiff is not to be supposed to have conceived the idea that the railroad company, in selecting their depot station, were controlled by other considerations than their own interest, and that, in acquiring rights of way, it purposed to fix such depots with reference to a contemplated design to affect the values of property of other persons, either by passing through their lands or in the establishment of the depots along the line of the road. The plaintiff must have regarded the precise and identical spot for the location of the depot, at the time of his negotiations, as undetermined; and that the establishment of it definitely would be made with reference to the railroad company's views of its best interest, and not to that of the proprietors of the lands of the surrounding country. We may reasonably conclude that neither party, in speaking of the probable spot for its location, contemplated that a viola-

tion of an agreement to locate it within the specified limits involved an undertaking by the company to be responsible for the difference in values of property which might result to the property holders of the adjacent country, in the ratio of their remoteness to the place where the depot should be established.

Neither, then, is the comparative value of the property, estimated with reference to the place where the depot was built, nor where, according to the supposed contract, it should have been erected, nor the damages directly caused the land and property of the plaintiff by reason of the construction of the road, the proper rule for the measurement of plaintiff's damages; but the true rule is indicated by the above quotation, to be applied to all the facts and circumstances adducible in evidence, to show the injury sustained by the plaintiff on account of the increased distance of the depot, as it was actually established, from the plaintiff's residence and place of business, compared with the advantages he would have enjoyed in the uses of a depot located one mile and a half from the town of Mantua.

In respect to the damage claimed on account of cutting down by the defendant of his bois d'arc hedge, the allegations made to show a liability are too vague and general, taken in connection with the whole transaction, to show a right of action for damages. It is not negatived that the act complained of was necessary, and fully contemplated by the parties, when the right of way was granted by the plaintiff; and that whatever injury might result to the plaintiff therefrom was fully considered and estimated together with the advantages he expected to otherwise derive by the building of the road.

We conclude that the court erred in overruling defendant's demurrer, and that the judgment ought to be reversed, and the cause remanded for further proceedings. As the plaintiff may so amend his petition as to present a

cause of action in view of another trial, we have deemed it proper to make the foregoing observations in relation to the proper rule for the measurement of the plaintiff's damages. The charges given and those asked for by defendant and refused, as well as the general direction given to the case on the trial, have suggested to us the propriety of indicating, in a general way, our views upon this branch of the case.

REVERSED AND REMANDED.

[Opinion delivered May 3, 1881.]

NOTE TO THE ABOVE OPINION.— The case of East Line R. R. Co. *v.* Garrett, 52 Tex., 133, had escaped the observation of the writer until after the foregoing opinion was prepared. The decision made in that case is here now referred to as supporting the correctness of our conclusions upon the leading questions in this case.

RICHARD S. WALKER, *Comm'r.*