EASTON v. COLEMAN et al.    (No. 8607.)*

(Court of Civil Appeals of Texas.    Dallas.
Dec. 17, 1921.    Rehearing Denied
Jan. 21, 1922.)

Deeds ⚖➡60—Delivery to grantee on condi-
tions held to have effect of absolute deliv-
ery.

Where a husband made a deed to his wife,
and delivered it to her on condition that it was
to be given back to him, and to be inoperative
in case of a separation in the future, his de-
livery was absolute, and operated to pass title.

Appeal from District Court, Grayson Coun-
ty; Silas Hare, Judge.

Suit by F. G. Coleman and others against
Kate Easton. From the judgment, Kate Eas-
ton appeals. Affirmed in part, reformed in
part, and reversed in part.

Reasonover & Reasonover, of Denison, and
Wolfe, Freeman & Wolfe, of Sherman, for ap-
pellant.

McReynolds & Hay, of Sherman, and W. S.
Pearson and J. H. Randell, both of Denison,
for appellees.

VAUGHAN, J. The suit on which this ap-
peal is based was originally filed by appellee
F. G. Coleman, as plaintiff in the trial court,
against appellant, Mrs. Kate Easton, to re-
cover the title and possession of 40 acres of
land situated in Grayson county, and to re-
move a cloud from his title cast thereon by
written instrument in the form of a deed in
which Michael Hanna, one of the appellees,
is grantor, and appellant is grantee. Appel-
lant impleaded one Louie Gossen and appel-
lee Hanna. Gossen answered that he occu-
pied the land as Coleman's tenant, and dis-
claimed any other interest therein. After
Hanna and Gossen were impleaded, Coleman,
by his second amended original petition, pro-
ceeded against appellant and appellee Hanna,
alleging the formal statutory action in tres-
pass to try title, and that he had acquired
and held title through deed made to him by
the sheriff of Grayson county under an order
of sale issued out of the district court of the
Fifty-Ninth judicial district to enforce a cer-
tain judgment rendered in the case of R. D.
Bierne v. Michael Hanna, foreclosing a deed
of trust lien upon the land to secure indebted-
ness due by Hanna to Bierne. He averred,
further, that appellant and Hanna were mar-
ried about March 16, 1918, and divorced about
the 9th day of October, 1919, and appellee's
former name, Kate Easton, restored; that
about March 28, 1918, appellee Hanna exe-
cuted a written instrument in the form of a
deed to his then wife (appellant) to the land
in controversy; that said instrument¹ was
without effect because not delivered to appel-
lant nor intended to operate as a conveyance

of title, and was without consideration; that
appellant and appellee Hanna contemplated
improving and using the land as a home for
themselves during their declining years; that
Hanna had a wayward and extravagant son,
and desired to protect his wife, appellant,
against the demands of said son; that to ef-
fect those purposes, and because of his con-
fidence in his wife, appellee Hanna executed
said instrument and intrusted it to the ap-
pellant's care and custody, with the under-
standing and agreement that it should not be
placed of record during appellee Hanna's life-
time, and that the instrument should at all
times during his lifetime remain subject to
revocation and cancellation by appellee Han-
na at his option, and that the same should be
surrendered to appellee Hanna whenever de-
manded by him; that it was understood be-
tween appellant and said Hanna that, in case
Hanna should fail to revoke the instrument,
then, after his death, appellant should have
the right to have the instrument recorded,
and not otherwise; that thereafter appellant
mistreated Hanna, and that Hanna was
forced thereby to leave her for his happiness
and safety; that after said separation Han-
na sought to obtain the instrument to cancel
and destroy it, but that appellant declined to
deliver it, and, in fraud of Hanna's rights,
attempted to have the instrument recorded as
a deed; that the county clerk refused to file
and record the instrument because it was not
stamped as required by the federal law, and
that appellant, wrongfully and without right,
caused the said deed to be materially altered
by having written therein the words in the
consideration thereof "which total considera-
tion of this deed does not exceed two thou-
sand dollars," and afterward recorded; that
the said written instrument was void by rea-
son of the facts above stated; that the same
cast a cloud upon his (Coleman's) title to the
property—and he sought, in addition to the
ordinary judgment in trespass to try title,
the cancellation of said instrument, the re-
moval of said cloud, and damages.

After being impleaded, appellee Hanna
substantially pleaded the same facts in refer-
ence to the execution and delivery of said
deed as pleaded by appellee Coleman, and,
in addition thereto, that in December, 1918,
he entered into a written contract with Cole-
man to sell and convey the land in question
by warranty deed to Coleman, free of liens,
for a consideration of $5,000 and in conform-
ity with that contract on December 28, 1918,
he executed to Coleman a deed to the land
which was recorded; that said deed recites
a cash consideration of $5,000, but that only
a part of the consideration had been paid;
that he is still willing to perform said con-
tract; that at the time the contract was
made he was indebted to R. D. Bierne to the
amount of about $1,279, evidenced by promis-

sory notes and secured by a deed of trust on the land; that the cash consideration of $5,-000 was to be paid by Coleman discharging the Bierne indebtedness and paying the balance in cash; that the filing of said instrument by appellant rendered it impossible for him to complete his trade with Coleman or satisfy the Bierne indebtedness; that Bierne recovered judgment for his indebtedness foreclosing the lien; that Coleman at sheriff's sale purchased the land and paid $1,450 to the sheriff for said sheriff's deed; that in case Coleman failed to carry out the terms of his contract he is entitled to have the title to the land vested in him charged with a lien thereon equal to the amount so expended by Coleman. He sought judgment against Coleman for the balance due on the agreed price of the land, for the cancellation of the instrument given by him to appellant, and in the event Coleman should fail to carry out the terms of the contract between them, he have judgment against all the parties other than himself for title and possession of the land and removing said clouds.

The appellant tried the cause on her fourth amended original answer, containing a plea of coverture, a general denial, a plea of not guilty, a plea of common source of title, a cross-action alleging that the instrument of writing executed by Hanna to her, dated March 20, 1918, was in fact a deed of gift from Hanna to her, which she accepted and under which she acquired title and went into possession of the land, a formal statutory action in trespass to try title against all appellees, a demand for rent, and allegations that the indebtedness claimed by Bierne was not in fact owing; that she was not a party to the Bierne foreclosure suit, and was not bound by the judgment entered therein, and that the attempted sale thereunder by the sheriff under the order of sale was without effect as to her; that the sheriff's deed cast a cloud upon her title; that Coleman knew that Hanna had no title to the property at the time he executed deed to Coleman; that Coleman had not paid any part of the consideration to Hanna for said deed; that the deed from Hanna to Coleman cast a cloud upon her title; that, if she be mistaken as to the Bierne indebtedness being valid, and if Coleman was entitled to be repaid the amount he had paid to the sheriff, she was ready, able, and willing to pay same; that if she is indebted to Hanna she is ready, able and willing to pay him, and that she desired all the rights of all the parties to be adjudged and declared—and prayed for judgment for title and possession, the adjudication of all the rights of all the parties, that she be permitted to do complete equity, for judgment for rents, and that the clouds cast upon her title be removed.

Coleman, on October 16, 1920, filed his supplemental petition, consisting of general ex-ception, general denial, and admitted that he entered into the contract with Hanna alleged by Hanna. He alleged that Hanna did execute and deliver the deed to him as alleged by Hanna; that Hanna was indebted to Bierne substantially as alleged by Hanna; that a deed of trust lien was foreclosed on the land in the suit by Bierne against Hanna; and that the land was sold by the sheriff and purchased by him for $1,450 cash, and that he acquired title to the property through the said deed. In this supplemental petition Coleman denied knowledge of the "instrument in the form of a deed" executed by Hanna to appellant until he received Hanna's deed, and averred that after learning the same he refused to proceed further with his contract, except to buy the property at sheriff's sale to protect himself; that he is willing to perform his contract with Hanna—but asked credit for the money paid to the sheriff. He sought the cancellation of the deed from Hanna and prayed for specific performance of the contract of sale between him and Hanna, and, in the alternative, that if Hanna did not obtain judgment for the title to the land that he have judgment for the $1,450 paid him for the land at sheriff's sale, with interest, against appellant and Hanna, and for a judgment lien on the land to secure the payment of the said $1,450, with interest.

Hanna filed a supplemental answer, containing exceptions and general denial and special answer denying the validity of the instrument from him to appellant, asking that it be canceled and the cloud from his title occasioned thereby removed.

Appellant by her first supplemental answer alleged that the deed from Hanna to her was a deed of gift, and did not require federal revenue stamps; that title was vested in her to the land by reason of Hanna's deed before it was recorded; and that the deed was changed and revenue stamps affixed in order that she might have the deed recorded, and without fraud, mistake, or intent to evade the payment of revenue.

In view of the fact that the determination of the issues presented by appellant's first and second propositions under her first, second, and third assignments of error will dispose of all other questions before this court for review and revision, we therefore have confined our discussion to such facts as are material to the proper determination of such propositions:

First, that "the delivery of the deed of general warranty with no condition, reservation or limitation contained therein is absolute and passes the title notwithstanding an oral agreement between the parties that it should be effective only on specific oral conditions understood and agreed to by the parties"; and, second, that "where the undisputed evidence shows that it is the intention of the parties to an absolute deed containing no condition or

limitation for the title to pass to the grantee who is the wife of the grantor upon any contingency or in any event or at any time and where the undisputed evidence further shows that the deed is voluntarily placed by the grantor in the possession of the grantee with said intention, absolute delivery is established and cannot be questioned by parol evidence."

The deed executed by appellee Hanna to appellant, Easton, is as follows:

"State of Texas, County of Grayson.

"Know all men by these presents: That I, Michael Hanna, of the county of Grayson in the state aforesaid, for and in consideration of the sum of one dollar cash to me in hand paid, the receipt of which is hereby acknowledged, and the love and affection I have and bear for my wife, Kate Hanna, and other good and valuable considerations, which total consideration of this deed does not exceed $2,000.00, in hand paid, the receipt of which is hereby acknowledged, have this day sold, and do by these presents grant, bargain, sell and convey to Mrs. Kate Hanna, wife of Michael Hanna, of the county of Grayson and state of Texas, all that certain tract or parcel of land described as follows: Situated in the county of Grayson, state of Texas, on the waters of Iron Ore creek, being a part of survey originally granted to T. R. Shannon, and described as follows, to wit: [Here follow field notes, which are omitted.]

"Together with all and singular the rights, members, hereditaments and appurtenances to the same belonging or in any wise incident or appertaining.

"To have and to hold all and singular the premises above mentioned unto the said Kate Hanna, wife of Michael Hanna, her heirs and assigns forever. And I, the said Michael Hanna, do hereby bind myself, my heirs, executors and administrators to warrant and will forever defend all and singular the said premises unto the said Kate Hanna, wife of the said Michael Hanna, her heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof"

—which deed contains no condition, reservation or limitation, and we must look to the oral evidence to determine whether or not the placing of the deed by appellee Hanna in the possession of appellant amounted to a delivery within the meaning of the law so as to pass title to the 40 acres of land therein described. Was the instrument delivered as a deed? Was it the intention of the grantor (appellee Hanna) that title should pass by the instrument to the grantee (appellant), upon any contingency, or in any event, or at any time?

Appellee Michael Hanna testified in reference to the delivery of the instrument, as follows:

"I was married to the defendant, Mrs. Kate Easton, on the 16th day of March, 1918. She was living out on her ranch when we were married. After we were married we went to living on her farm. After we were married we had conversations as to where we would live.

Our conversation was that we proposed to live on the 40 acres as our home in our old days. She said she had a good man to run her place. She said my 40 acres would grow fruit, and that she had tried growing fruit on her place, and could not raise it, and she said on my place we would be close to Denison, and we would make it our home. She said she had a good man that would rent her farm for five years, and that we would build a five-room house on my place and live there the rest of our days. A few days after we were married she came in the room with a will in her hand and says: 'This is my will.' She did not read it all, but read part of it. I asked her who her administrator was, and she said Mr. Fowler. I said, 'You are going to make a new will; I suppose you will remember me in it,' and she said, 'What other reason would I have for making a will.' I said, 'That reminds me, I will make a will, and, if I possibly can, will make it stronger than a will to keep that scoundrel from getting a cent.' I referred to my son. I had told her about the conduct of my son prior to that time. I told her that he was a spendthrift and a gambler. Up to the time I had the document prepared which I gave to my wife, and for a month after that, she treated me kindly. She got all my confidence. After I had that conversation with her I had the instrument prepared by Mr. Wood. * * * That was after we had the conversation about her will and where we would live. I gave Mr. Wood instructions about the kind of an instrument I wanted prepared. Mr. Wood afterwards prepared the instrument, and after he prepared it I signed it. It was probably two days after I first saw Mr. Wood, and I asked him to prepare the instrument until I went back and signed it. I told Mr. Wood that about day after tomorrow we would be in, and he said he would have it all ready for me. The defendant, Mrs. Kate Easton, went to Mr. Wood's office with me after the instrument was prepared. I introduced her to Mr. Wood. Mr. Wood handed me the deed and I put it in my coat pocket and we walked out. * * * Mrs. Easton, her daughter, and I walked across the street to the creamery where she sells cream. * * * The car was standing there, and we were about ready to go home, and I had the instrument hanging out of my pocket, and she had a satchel, and I handed it to her and told her to put it in her satchel; that it might blow out of my pocket on the road. She put it in her satchel, as I requested. When I got home I was sitting on the side of the bed, and she opened the satchel and handed the instrument to me. I says: 'Kate, put them among my papers in that bureau. This is a will, but it is stronger than a will. When you bury me and we live together good and nice, that place is yours, but if we agree to disagree and there is a separation, will you give it back to me?' She says: 'I certainly will.' That is all. She was standing a foot and a half or two feet from the bureau. The instrument was placed in the bureau where I had my clothes and other papers. I told her to place it with my other papers. The bureau drawer where it was placed was always unlocked. I never bothered my papers until she came over to Sherman and came home and told me she wanted to scratch a line off the

deed and stamp it, and said it would save me some money. I never saw this (the deed) again until I saw it in court. I made a search for it afterwards to see if it was where she had put it under my direction. I searched through all the furniture that had drawers in it except one center table, and it was locked. She was gone the day I made the search. * * * Two or three days after I told her to put the instrument away she wanted me to scratch out a line in it and stamp it. I do not mean two or three days, but two or three weeks. I afterwards made a search for the instrument and couldn't find it. When I gave her the instrument it was not to go on record. After I executed the instrument, and it was put away under the circumstances I have detailed, the defendant, Mrs. Kate Easton, was very unkind to me. I left her because of her bad treatment of me. * * * We agreed and she understood it was not to go on record until after I was dead. She asked me if it was a will why I did not leave it in the bank. She thought it would be safer in the bank. I asked her at the house once or twice in town to return the instrument to me. She refused to give it back to me."

From the above evidence no other logical conclusion can be reached than that the delivery of the instrument was, at the time, effective as a deed of conveyance, passing title to appellant, the grantee. In other words, that the act of placing said instrument by appellee Hanna, the grantor, in the possession of the grantee, appellant, was a delivery in law, so that the instrument immediately became effective as a conveyance of title, notwithstanding any oral agreements theretofore made qualifying and limiting the effect of grantee's possession as testified to by appellee Hanna.

We have examined a great many cases adjudicating the particular questions under discussion, and quote from the following as so thoroughly comprehending and disposing of same as to make further observation unnecessary, as same would be but a perfunctory service:

The rule is thus stated in 8 R. C. L. 983:

"The simplest mode of delivering a deed is by manual transfer of it by the grantor to the grantee, with the intention of relinquishing all control over the instrument and of passing title to the property. This delivery is defined as 'absolute delivery' and undoubtedly it constitutes a consummation of the deed. * * * Furthermore, the effect of a direct delivery to the grantee cannot be obviated by the intention of the parties that it shall operate merely as an escrow, or take effect only upon specified contingencies, the intervention of a third person being absolutely essential to the accomplishment of such a purpose; certainly the delivery is sufficient after the happening of the contingency. This is one of the instances in which the law fails to give effect to the honest intention of the parties for the reason that they have not adopted the proper legal means of accomplishing their object. Therefore, the legal effect of such delivery is not altered by the fact that both parties suppose that the deed will not take effect until recorded, and that it may be revoked at any time before record, or by contemporaneous agreements looking to the reconveyance of the property to the grantor or to a third party upon the happening of certain contingent events or the nonperformance of certain conditions."

In 21 C. J. 874, the rule is thus given:

"A deed absolute on its face cannot be deposited by the grantor with the grantee therein named to be held by the latter in escrow; such a deposit becomes a delivery which operates to vest absolute title in the grantee immediately.

"The rule is equally true, although the parties did not intend at the time of the deposit of the deed that the grantee should acquire legal title to the land to be conveyed, and treated the instrument merely as documentary evidence of title, erroneously assuming that, notwithstanding the deposit with the grantee and its acceptance by him, the legal title would not pass until he had performed certain acts."

In 16 Cyc. 731, this language appears:

"An instrument complete on its face for the conveyance of land cannot be deposited with the grantee as an escrow; such deposit becomes a delivery and the instrument so delivered becomes a deed, which takes effect presently as the deed of the party making the delivery regardless of the oral conditions attached which the party will not be bound to perform. The rule is equally true, although when the instrument was delivered the parties did not intend that the grantee should acquire the legal title to the land to be conveyed and treated the instrument merely as documentary evidence of title, and erroneously assumed that, notwithstanding its delivery to the grantee and its acceptance by him, the legal title would not pass until he had performed certain acts."

In 18 C. J. 211, the author says:

"A delivery of a deed must be unconditional, unless it is in escrow. It is well settled that a deed cannot be delivered to the grantee in escrow upon a condition not expressed in the instrument, and, if such a delivery is attempted, the deed will take effect regardless of the condition."

In Springfield Fire & Marine Ins. Co. v. Morgan, 202 S. W. 784, it is stated:

"The grantee named in a deed cannot hold it as an escrow, and it takes effect on delivery despite his agreement that it shall not be effective as a conveyance until he has done certain things."

In Holt v. Gordon, 107 Tex. 137, 174 S. W. 1097, Judge Phillips, speaking for the Supreme Court, said:

"It may be shown by parol testimony that an ordinary written instrument was executed under an agreement that it was not to become effective except upon certain conditions. * * * But that principle has never been recognized by this court as applicable to a deed to land, or a deed of trust affecting the land,

where the delivery of the instrument was made to the grantee and not to a third person. It has, upon the contrary, been distinctly held that a deed or deed of trust cannot be an escrow where it is delivered to the grantee in the instrument."

Judge Phillips quotes from Heffron v. Cunningham, 76 Tex. 313, 13 S. W. 259, as follows:

"The deed was delivered to appellant, and there can be no claim that he held it as an escrow, to take effect on condition not expressed in its face, as might have been shown to be the case had it been delivered to a stranger. Having been delivered to appellant, the grantee, it became an absolute conveyance, on which could not be engrafted by parol evidence any condition inconsistent with its terms"

—and continues thus:

"That ruling cannot be regarded other than as decisive of this question. Holt's deed was delivered to Gordon, the grantee named in it, and, accordingly, immediately took effect."

The Court of Appeals of Kentucky in the case of Bank v. Anderson, 225 S. W. 361, says:

"It is elementary law that a delivery is essential to the validity of a deed, that no title passes in its absence, and that the intention of the parties is an essential element of the delivery; but it is also true that, to create an escrow, the delivery must be to a stranger, and courts uniformly hold that a delivery to the grantee is an absolute delivery, and the title passes despite any agreement between them—that the deed shall be effective only upon specified conditions."

In Paris Grocer Co. v. Burks, 101 Tex. 107, 105 S. W. 176, the Supreme Court says:

"Her deed upon its face was an unconditional conveyance and passed the title to the land. Whatever may be the nature sought to be ascribed to the claim asserted under the parol evidence, it is in truth an attempt to engraft upon the deed a parol condition. That this cannot be done we understand the authorities to hold uniformly. In connection with allegations of fraud, accident or mistake such a stipulation and its nonperformance may be employed in equity as the basis for a cancellation; but the bare effect to use it as in itself furnishing a ground for defeating or qualifying the deed is opposed to the well-settled rule that such instruments cannot be added to by parol. This cannot be evaded by calling the promise the consideration of the deed and invoking the rule often laid that a consideration different or in addition to that expressed may be shown. This may be done when such evidence has some legitimate purpose to accomplish in the case, such as to enforce a vendor's lien or a trust, or to show that a conveyance apparently without consideration was really upon a valuable one; but such evidence may not be used to defeat the deed as a conveyance. The evidence introduced here does not tend to show either a lien or a trust, and, as the title which passed by the deed could not be effected by the evidence introduced, it tended to establish no controlling fact. Galveston, H. & S. A. Ry. Co. v. Pfeuffer, 56 Tex. 66; Houston & T. C. Ry. Co. v. McKinney, 55 Tex. 187; East Line & Red River R. R. Co. v. Garrett, 52 Tex. 133; Kahn v. Kahn, 94 Tex. 119; Marshall County High School Co. v. Iowa Evangelical Synod, 28 Ia. 360; Moser v. Miller, 7 Watts, 156; Chapman v. Gordon, 29 Ga. 250."

In McClendon v. Brockett, 32 Tex. Civ. App. 153, 73 S. W. 855, the following clear and convincing statement of the law is made:

"The deed in question was delivered upon condition, but it was delivered as the deed of the grantor, and not for some special purpose, as was the case in the instances cited above, where it was held that there was no delivery. True, Mrs. Tipton testified that the deed was deposited with the grantee in trust, or for safe-keeping; but the grantee was not a proper depositary for such purpose. If a deed is to be held in escrow, a stranger must be selected as custodian. The grantee cannot act in that capacity. * * * It is uncontroverted that the deed was intended to take effect on the happening of a particular event and on the performance of a certain condition. It is clear that, if the grantee agreed to hold the deed in trust, it was to await the happening of the event, and to secure the performance of the condition. Such holding would make the deed an escrow if the delivery was to a stranger, but the deed could not be held by the grantee upon such terms. When the deed was delivered to the grantee, his holding was unconditional, and parol evidence is not admissible to show that he accepted the deed to be held by him in trust until his mother died and he had paid to her other heirs the sums of money he had agreed to pay."

In Lambert v. McClure, 12 Tex. Civ. App. 577, 34 S. W. 973, the court said:

"Any verbal agreement made by Mrs. McClure at the time and prior to the execution of the deed could not be considered. If there were no conditions expressed in the deed when it was delivered to one of the grantees it was an absolute delivery, whatever oral conditions may have been agreed to by the grantee in regard to it. * * *

"If it should be a desire of a grantor that his deed should not take effect until some condition is performed, he should keep the deed himself, or leave it with some third person, a stranger to the transaction. If he delivers the deed to the grantee, it goes into effect at once, regardless of the performance of any condition not expressed in the deed, and testimony as to any such condition would not be admissible."

The following cases sustain the principles announced in the opinions above quoted from: Speer et al. v. Dalrymple, 196 S. W. 911; Manton v. San Antonio, 207 S. W. 951; Lapowski v. Smith, 1 Tex. Civ. App. 391, 20 S. W. 957; East Texas Fire Ins. Co. v. Clarke et al., 1 Tex. Civ. App. 238, 21 S. W. 277; Lott v. Kaiser, 61 Tex. 665; Whitney v. Dewey, 10 Idaho, 633, 80 Pac. 1117, 69 L. R. A. 572; Gardner v. Stell, 34 Tex. 564; Callahan v. Houston, 78 Tex. 494–497, 14 S. W.

1027; G. H. & S. A. R. R. Co. v. Pfeuffer, 56 Tex. 66–71; Kahn v. Kahn, 94 Tex. 114, 58 S. W. 825; Ford et al. v. Boone et al., 32 Tex. Civ. App. 550, 75 S. W. 353; Gaffney et al. v. Stowers, 73 W. Va. 420, 80 S. E. 501; Holt v. Gordon, 176 S. W. 902. Under the facts and above authorities, we sustain said propositions.

The deed from appellee Hanna to appellant was signed, acknowledged, and delivered on March 20, 1918, and was filed for record January 31, 1919. Appellee Hanna executed deed of trust to one R. D. Bierne to secure the payment of notes aggregating $1,100; the date of this instrument is not disclosed by the record. On the 28th day of December, 1918, appellee Hanna executed deed to appellee F. G. Coleman conveying the same 40 acres of land described in deed from appellee Hanna to appellant. Appellee Hanna and appellant were divorced on October 10, 1919, appellant's former name, Easton, being restored. On the 12th day of August, 1919, judgment was rendered in the suit of R. D. Bierne v. Michael Hanna for $1,279, with foreclosure of deed of trust lien on said 40 acres of land. Appellant was not a party to said suit. Order of sale was issued on the above judgment and sale of said land made by sheriff to appellee F. G. Coleman by deed of date October 10, 1919, for $1,450 paid. Appellee Coleman testified as follows:

"Hanna told me about the instrument he had executed to his wife as we were going down stairs just after he had handed to me the deed he had executed to me. I took the deed from the sheriff to this 40 acres of land and paid the money to him without full knowledge of the contention of Mrs. Easton in this suit. She and I both were at the sale. I had full knowledge of her claim at the time I bid in the property."

By his pleadings, the appellee Coleman asserted, first that he was an innocent purchaser for value under the deed executed by appellee Hanna to him, and, second, was also an innocent purchaser for value under the sheriff's deed executed to him conveying the 40 acres of land involved in this suit, and that under each of said conveyances he acquired title as against all the parties to said suit.

The judgment of the trial court determined such claims adversely to appellee Coleman, which is not questioned on this appeal; therefore must be accepted as conclusive in reference to the issues involved therein as against all parties. The jury found the fair cash rental value of the property to be the sum of $419.

Holding, as we do, that the deed was delivered by appellee Hanna to appellant so as to take effect as a conveyance of title on the date delivered, to wit, March 20, 1918, and the case having been fully developed on the

facts, it is our duty to proceed to render the judgment that should have been rendered by the trial court, viz.: The judgment of the court below, in so far as it adjudges the appellee Coleman not to be an innocent purchaser for value of the 40 acres of land, either under the deed from appellee Hanna or the sheriff's deed, is in all things affirmed, and is reversed and rendered in behalf of appellant against appellees for the 40 acres of land described in the deed from appellee Hanna to appellant, and against appellee Coleman for the sum of $419 as rents, and that the deed from appellee Hanna to appellee Coleman of date December 28, 1918, and the deed from W. B. Craig, sheriff, to appellee Coleman of date October 10, 1919, in so far as same cast a cloud on title of appellant to said 40 acres of land, be, and the same are hereby, canceled, set aside, and held for naught; and said judgment is reformed and rendered in behalf of appellee Coleman for the sum of $1,450, with interest thereon at the rate of 6 per cent. per annum from October 10, 1919, with foreclosure of lien on the 40 acres of land as against appellant to secure the payment of said sum, less the sum of $419 rents above adjudged to be applied as a credit on said sum of $1,450 as of date November 15, 1920. All costs incurred in this court and the court below adjudged and taxed against appellee Coleman.

---

⬤═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes