JACKSON v. PURE OIL OPERATING CO.
et al.    (No. 9143.)

(Court of Civil Appeals of Texas. Ft. Worth.
Oct. 18, 1919. Rehearing Denied
Nov. 22, 1919.)

1. JUDGMENT ⟐⟐143(10)—DISCRETION IN SET-
TING ASIDE DEFAULT THROUGH INADVERT-
ENCE OF COUNSEL NOT ABUSED.

Where answer was not filed until one day
after judgment was rendered, because of in-
advertence and mistake of counsel in misdi-
recting answer through the mail, court did not
abuse its discretion in setting aside default.

2. APPEAL AND ERROR ⟐⟐1074(1)—OPENING
OF DEFAULT HARMLESS, WHERE EVIDENCE IN-
SUFFICIENT TO SUSTAIN PLAINTIFF'S ACTION.

In lessor's action against lessee and les-
see's assignee, where only relief sought against
lessee was cancellation of lease, the opening of
default entered against lessee was harmless,
where plaintiff showed no valid ground for can-
cellation of lease as against assignee.

3. JUDGMENT ⟐⟐164—DEFAULT AGAINST CO-
DEFENDANTS PROPERLY OPENED ON MOTION
OF OTHER DEFENDANT.

In lessor's action against lessee and lessee's
assignee, where only relief sought against les-
see was cancellation of the lease, and where
lessor failed to show any ground for cancella-
tion as against assignee, court, in setting aside
the default against the assignee, also properly
opened it as against lessee.

4. MINES AND MINERALS ⟐⟐58—LESSEE'S OP-
TION TO TERMINATE LEASE BASED UPON VAL-
UABLE CONSIDERATION VALID.

Stipulation in oil lease, giving lessee the
option to terminate lease at any time "in con-
sideration of the money paid at the delivery
hereof," held not void for lack of mutuality,
where $160 was paid lessor at time of execu-
tion of lease, and $110 paid as rental thereun-
der, the payment of such money constituting a
valuable consideration for option.

5. MINES AND MINERALS ⟐⟐74 — OIL LEASE
ASSIGNABLE WITHOUT LESSOR'S CONSENT.

Where oil lease provided that lessors "do
hereby grant, sell, convey, and lease unto the
lessee all the oil and gas in and under the fol-
lowing described tract of land, and also the
tract of land itself, and the possession there-
of for the purpose of entering and operating
thereon and removing therefrom said oil and
gas," and provided further that "all covenants
and agreements herein set forth between the
parties hereto, shall extend to their respec-
tive heirs, legal representatives and assigns,"
lessee could assign lease without lessor's con-
sent; an interest in the land itself, having
been conveyed subject to a defeasance of the
title upon lessee's failure to comply with the
covenants on his part required to be performed.

6. EVIDENCE ⟐⟐393(1)—PAROL EVIDENCE OF
REPRESENTATIONS NOT CONTAINED IN WRIT-
TEN LEASE INADMISSIBLE IN ACTION TO CAN-
CEL LEASE.

In action to cancel oil lease, evidence of
representations by lessee's agent, made to induce

lessor to execute lease, was inadmissible, where
at variance with terms of the written lease, in
absence of an allegation that representation
was omitted from written instrument by mu-
tual mistake or fraud practiced upon lessor.

7. APPEAL AND ERROR ⟐⟐1050(1)—ADMISSION
OF EVIDENCE WHICH COULD HAVE NO EFFECT
ON RIGHTS OF PARTIES HARMLESS.

In action to cancel lease, the admission of
evidence as to representations to lessor, made
to induce him to execute lease, was harmless,
where such evidence could not be given any ef-
fect, being at variance with the terms of the
written lease, and there being no allegation
that it was omitted from lease by mutual mis-
take or fraud practiced upon the lessor.

8. APPEAL AND ERROR ⟐⟐1071(1) — COURT'S
FAILURE TO FILE FINDINGS NOT REVERSIBLE
ERROR WHEN OF NO INJURY TO APPELLANT.

Court's failure to file findings is not re-
versible error, when the record contains a
statement of the facts from which it can be
deduced that the appellant has not been preju-
diced by such failure.

Appeal from District Court, Callahan
County; Joe Burkell, Judge.

Action by I. N. Jackson against the Pure
Oil Operating Company and another. From
judgment denying plaintiff relief sought, he
appeals. Affirmed.

J. Rupert Jackson, of Baird, and J. W.
Moffett, of Abilene, for appellant.

J. J. Butts, of Cisco, and G. Earl Shaffer, of
Tulsa, Okl., for appellees.

DUNKLIN, J. On August 18, 1916, I. N.
Jackson and wife executed to the Pure Oil
Operating Company what is commonly term-
ed an oil and gas lease to 1,540 acres of land
situated in Callahan county. On May 4,
1918, the lease was duly assigned to the Ohio
Cities Gas Company, the assignment being
made by the board of directors of the Pure
Oil Operating Company, which company had
theretofore been dissolved and had surren-
dered its corporate charter. This suit was
instituted by I. N. Jackson against the Pure
Oil Operating Company and the Ohio Cities
Gas Company to cancel the lease, and from a
judgment denying him the relief sought, he
has prosecuted this appeal.

The suit was returnable to the September
term of court for the year 1918, and Septem-
ber 17th was appearance day. On September
23, 1918, a judgment by default was rendered
in favor of the plaintiff against both defend-
ants, no answer having been filed by either
of those defendants at that time, and both of
them having been duly cited to appear and
answer at that term. But on September 24,
1918, the Ohio Cities Gas Company did file
an answer, and on the following day that de-
fendant filed a motion to set aside the judg-
ment by default rendered against it, which
motion was duly heard and sustained on Oc-

⟐⟐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

tober 1, 1918. And by the order granting that motion, it was also decreed that the judgment by default against the Pure Oil Operating Company be also canceled and set aside. Error has been assigned to the action of the court in setting aside the judgment by default and in granting a new trial, which resulted in the judgment from which this appeal has been prosecuted.

[1] It seems that when the case was called for trial on appearance day an order was made setting it for trial on its merits for October 1st following. This setting of the case was at the instance of the plaintiff's counsel and in compliance with an agreement with the attorney for the Ohio Cities Gas Company, to allow the latter further time for filing an answer for that defendant. Following that setting, counsel for that defendant agreed to file an answer by a certain date in September which was prior to the date of the default judgment. The answer was prepared and mailed in time to have complied with that agreement, but through inadvertence and mistake of counsel was misdirected in the mails, and on account of that mistake the answer was not filed until one day after the default judgment was rendered. Under the circumstances related, the trial court did not abuse the discretion vested in him by law to set aside the judgment by default against the Ohio Cities Gas Company. Field v. Fowler, 62 Tex. 65; Travelers' Ins. Co. v. Arant, 40 S. W. 853; Combination Fountain Co. v. Rodgers, 186 S. W. 407; Belknap v. Groover, 56 S. W. 249.

[2, 3] The record shows conclusively that prior to the institution of the suit the Pure Oil Operating Company had been dissolved, and its title to the lease had passed to the Ohio Cities Gas Company. The only relief sought by plaintiff against the Pure Oil Operating Company was the cancellation of the lease originally given to that company; no money judgment being requested. As held by the trial court, plaintiff showed no valid ground for a cancellation of the lease as against the Ohio Cities Gas Company, the assignee of the lease. No useful purpose could have been accomplished by permitting the judgment by default against the Pure Oil Operating Company to remain undisturbed, and the order setting aside that default judgment was harmless at all events. Indeed, if final judgment in favor of the Ohio Cities Gas Company was correct and should be affirmed, as we have decided should be done, then it was entirely proper to set aside the default judgment against the other defendant, and also deny a judgment against it upon final hearing in the absence of any appearance or answer by that defendant at any time, since such a judgment could have no other purpose than to cast a possible cloud upon the title of the Ohio Cities Gas Company to the lease in controversy.

The lease in controversy contained a recit-al of the payment to the grantors of the sum of $160 cash. A further consideration expressed in the lease was as follows:

"Lessee agrees to begin operations for the drilling of a well upon the described premises within one year from date hereof or hereafter to pay to the lessors the sum of $160 per annum quarterly in advance until a well is commenced or until the end of the five-year term hereof as a rental and complete remuneration to the lessors for delay."

The lease contains this further provision:

"In consideration of the money paid at the delivery hereof, and the payment of lease rentals above mentioned, lessee acquires and has the right and option to surrender this grant at any time upon the payment of the sum of one dollar, and all amounts then due hereunder, and thereafter be released and discharged from all payments, obligations and covenants herein contained; whereupon this grant shall become null and void, or to continue the same in full force and effect from quarter to quarter and from year to year by making the stipulated payments which lessors hereby bind themselves to accept when tendered."

In addition to the cash consideration of $160 received by plaintiff at the time the lease was executed to the Pure Oil Operating Company, he also received the three quarterly payments of rentals of $40 each, provided for in said lease, for nine months, beginning August 18, 1917, and ending May 18, 1918. On May 1, 1918, the Ohio Cities Gas Company, the assignee of the lease, offered to plaintiff another quarterly payment of $40 for the period beginning May 18, 1918, and ending August 18, 1918, but plaintiff refused to accept that offer, and repudiated the lease on the ground, as stated in his testimony in substance upon the trial, that the Ohio Cities Gas Company was not a party to the original lease, but was a stranger thereto. Later and prior to May 18, 1918, the company last named made a tender of $40 as rental for the quarter beginning May 18, 1918, but this tender was likewise refused.

[4] It cannot be denied that the $160 received by plaintiff at the time the lease was executed and the $120 received later for rentals constituted a valuable consideration to support the lease, and, this being true, appellant's contention that his contract with the original lessee was unilateral and therefore void must be overruled. Even though, by the terms of the further stipulation in the lease, the lessee was given the right to surrender the lease at any time upon the payment of a consideration of $1 and all rentals then due, yet, since the lessee had paid a valuable consideration for such option, his right to continue the lease in full force for five years was none the less enforceable. National Oil & Pipe Line Co. v. Teel, 95 Tex. 586, 68 S. W. 979; McEntire v. Thomason, 210 S. W. 563; Aycock v. Reliance Oil Co., 210 S. W. 848;

Guffey v. Smith, 237 U. S. 101, 35 Sup. Ct. 526, 59 L. Ed. 856; 36 Cyc. 625.

The lease contains this further stipulation:

"All covenants and agreements herein set forth between the parties hereto, shall extend to their respective heirs, legal representatives and assigns."

That stipulation amounts to a clear agreement on the part of the lessor that the lease should be assignable and that the assignee should have all the rights given the original lessee. Furthermore, by the terms of the lease, it is stipulated that the lessors "do hereby grant, sell, convey and lease unto the lessee all the oil and gas in and under the following described tract of land and also the tract of land itself, and the possession thereof for the purpose of entering upon and operating thereon and removing therefrom said oil and gas," etc.

[5] As held by our Supreme Court in the case of Texas Co. v. Daugherty, 107 Tex. 226, 176 S. W. 717, L. R. A. 1917F, 989, the use of such language had the effect to convey an interest in the land itself, subject to a defeasance of the title thereto upon failure of the grantee to comply with the covenants on his part, expressed in subsequent portions of the lease, and hence, for that reason also, the contract is not controlled by the statute and decisions cited by appellant to the effect that a tenant cannot assign his lease without the consent of the landlord.

At the instance of appellee the depositions of three witnesses residing in a foreign state were taken. Before the envelope in which the same were sent by mail was opened, the trial court heard and overruled appellant's motion to quash them and a bill of exception was reserved to that ruling. Upon the trial, appellee offered the depositions in evidence, and a bill of exception, shown in the record duly signed by the trial judge, recites the following ruling on the objections so made:

"The court overruled the objections to said testimony, and admitted only the part containing plaintiff's testimony as to a drilling contract, and considered the same in rendering his judgment in this cause, to all of which plaintiff then and there duly excepted."

[6, 7] A. L. Bates, who represented the Pure Oil Operating Company in its negotiations with appellant for the lease in controversy, was the only one of the three witnesses whose depositions were taken who testified relative to the drilling contract made by the Pure Oil Operating Company with the plaintiff, and hence we construe the statement by the trial judge in the bill as meaning that the testimony of the witness Bates relative to the drilling contract was the only portion of the depositions that was admitted in evidence. Bates testified that no promises were made to the plaintiff as to when drilling operations would begin, other than that contained in the written lease. One of the grounds alleged in plaintiff's petition for canceling the lease was the allegation that plaintiff was induced to execute the lease by a representation on the part of Bates, the agent of the Pure Oil Operating Company, to the effect that that company would begin the drilling of a well within a reasonable time, and the plaintiff so testified upon the trial. However, such testimony on the part of the plaintiff could not be given any effect, since it was at variance with the terms of the written lease, and the petition contained no allegation that it was omitted from the written instrument by mutual mistake or by any fraud practiced upon him. Henry v. Phillips, 105 Tex. 459–466, 151 S. W. 533; Sexton Rice & Irrigation Co. v. Sexton, 48 Tex. Civ. App. 190, 106 S. W. 728; G., C. & S. F. Ry. Co. v. Hume, 87 Tex. 211, 27 S. W. 110. The action of the court, therefore, in admitting the answers of the witness Bates, if error at all, was harmless.

Another ground relied on by plaintiff to cancel the lease was the alleged fraudulent misrepresentation by Bates of the solvency and ability of the Pure Oil Operating Company to drill a well as recited in the lease. While plaintiff testified that such a representation was made, no proof was offered to show that the same was false.

[8] The court filed findings of fact and conclusions of law, and, according to the file mark thereon, it appears that the same were filed later than ten days after the adjournment of the term of court at which the judgment was rendered. Those findings have been attacked by numerous assignments of error in appellant's briefs, and we have not been asked to disregard the same because of the delay of the trial court in filing them. But another assignment is presented to the failure of the court to file additional findings, although appellant has failed to point out with any degree of certainty just what additional findings were desired by him. Furthermore, it is well settled by the authorities that the failure of the court to file findings at all is not reversible error when the record contains a statement of the facts from which it can be deduced that appellant has not been prejudiced by such failure. Emery v. Barfield, 156 S. W. 311, and decisions there cited. A full statement of the evidence appears in this record; and, after a due consideration of the same, we have reached the conclusion that the material facts found by the court upon which the judgment is predicated are not only amply supported by the evidence, but that they are practically uncontroverted, and that no other valid judgment could have been rendered than the one from which the appeal has been prosecuted.

Accordingly, all assignments of error are overruled, and the judgment is affirmed.