**SILLIMAN v. OLIVER et al. (No. 6569.)**

(Court of Civil Appeals of Texas. San Antonio. May 26, 1921. Rehearing Denied Oct. 12, 1921.)

1. Evidence ⊜➡419(3), 432, 461(2)—Mortgages ⊜➡37(2)—Trusts ⊜➡43(3)—Parol evidence admissible to show failure of or additional consideration and intent; deed intended as mortgage.

As a rule parol agreements will not be allowed to vary the effect of plain recitals in a deed, and when the grantor himself delivers a deed to the grantee it automatically becomes effective in accordance with the purposes plainly expressed thereon; but parol testimony may be received, showing that the cash consideration recited was not paid, and that other or additional consideration than that expressed was contemplated by the parties, or that the deed was intended as a mortgage, or to create a trust, and not to pass title, or that it was not executed or delivered with the intention that it should become operative as a conveyance.

On Motion for Rehearing.

2. Trespass to try title ⊜➡4—Recovery by legal owner not permitted until reimbursement of person paying debt.

Where one rightfully obtains possession of land by paying a mortgage debt of the legal owner, thereby discharging the mortgage lien, the legal owner will not be permitted to recover the possession until he has reimbursed the one already rightfully in such possession.

Appeal from District Court, Val Verde County; Joseph Jones, Judge.

Action by W. B. Silliman against Walter Oliver and others. From an adverse judgment, plaintiff appeals. Reversed and remanded.

M. E. Sedberry, of Eldorado, Wardlaw & Elliott, of Sonora, Boggess, Smith & La Crosse, of Del Rio, and W. H. Lipscomb, of San Antonio, for appellant.

John J. Foster and Walter Gillis, both of Del Rio, and Douglas, Carter & Black, of San Antonio, for appellees.

SMITH, J. W. B. Silliman, plaintiff below and appellant here, brought this action originally against J. S. Pelt to recover title to and possession of an undivided one-half of 17,712 acres of land in Val Verde county, and for partition. Pelt impleaded Walter Oliver upon the latter's warranty. In response to a peremptory instruction, there was a jury verdict against Silliman, and from a judgment appropriate to the verdict Silliman has appealed.

The legal title to the land was acquired by Oliver in a foreclosure proceeding by the payment of $8,200, procured from a bank for that purpose upon the joint note of Oliver and Silliman. The title was conveyed direct to Oliver alone, in pursuance of an agreement between the two. This agreement embraced the further stipulation that Oliver go ahead and fence the land, and perhaps otherwise improve it, as a ranch. The project required more money, which neither party had, so the $8,200 loan was transferred to another bank, enlarged and embraced in a new note for $15,000, which was also jointly executed by Oliver and Silliman, who, in order to make it negotiable, procured Pelt to in-

dorse it. The money was thus obtained, the $8,200 note retired, and Oliver proceeded with the improvement of the property. When the $15,000 note became due, the holder refused a renewal, and demanded payment. Silliman had no money or property, was insolvent, and could do nothing towards relieving the situation. Oliver had no money, but did own considerable property in land and live stock, and with this property as security he procured a loan, on his individual note, from a St. Louis bank for about $55,000, and out of this loan paid off the $15,000 note. This loan was made through Silliman as agent of the St. Louis bank, and in this transaction Silliman got out from under the obligations supporting the venture, and did nothing further to carry the load, the entire burden of which rested alone upon Oliver then and thenceforth. Early in the negotiations, Silliman had paid a few small items of expense in the venture, the testimony conflicting as to the purposes and amounts of these payments, while it was undisputed that Oliver paid out as much as $20,856 in cash in procuring and protecting the title and improving the property. Long before Oliver's $55,000 note to the St. Louis bank matured, Silliman, as agent of the bank, demanded the payment of $28,000 on the principal of the note, giving as a reason for the demand that the security was insufficient, or had been impaired. Oliver asked for indulgence, and time for rearrangement of his affairs, but Silliman curtly insisted upon immediate payment, and Oliver, without available cash, set about to meet the demand. He succeeded in borrowing $10,000, which he applied on the loan, but this did not satisfy Silliman, who peremptorily demanded the balance, whereupon Oliver, finding himself unable to raise the money in any other way, and in apparent desperation resulting from Silliman's threatening attitude, sold and conveyed the land in dispute to Pelt for $20,000 cash, Pelt assuming, in addition, an old outstanding vendor's lien note, originally held by Pecos county against the land, for $15,712.

It appears that at the time Silliman and Oliver gave their joint note for $15,000 Oliver executed a deed conveying to Silliman a one-half interest in the land, the consideration, as recited in the deed, being $5,000 cash, which, according to the testimony, was not paid, and the assumption by Silliman to pay one-half of the Pecos county note for $15,712. The testimony sharply conflicts as to the purposes for which this deed was given, and as to the circumstances under which it was given, delivered, subsequently surrendered, and redelivered, if at all. It was executed on August 2, 1917, but was not recorded until May 2, 1919. The conveyance from Oliver to Pelt was made on December 29, 1918, and recorded January 2, 1919, five months before the Oliver-Silliman deed was recorded.

Now, we have set out only such material facts as appear to be undisputed. They constitute only a skeleton outline of the case as made by the evidence. Every other fact in the case seems to be sharply in dispute. The testimony raises a number of material issues, among them being those of innocent purchaser, estoppel, the consideration and purposes of the Oliver-Silliman deed, and the question of the delivery and subsequent surrender and redelivery of that deed. These matters in our opinion should have been submitted to the jury, and to that end the judgment must be reversed and the cause remanded. The determination of the questions of law raised by the assignments of error depends so intimately upon the effect, force, and sufficiency of the evidence as to preclude any extended discussion of those questions here.

The court below admitted testimony showing the facts and circumstances, and the oral agreements and understandings between Oliver and Silliman, leading up to and inducing the execution of the deed from the one to the other, as well as the delivery, surrender and redelivery of the deed, and conduct and agreements of the parties subsequent to its execution. Appellant objected to the admission of this testimony upon the familiar grounds that the deed was the final expression of the parties into which all antecedent and contemporaneous parol agreements were presumed as a matter of law to have been merged; that where, as here, the deed was delivered in person by the grantor to the grantee, upon condition, it takes effect regardless of such condition. In the abstract, appellant's contention is correct, and elemental. But we think the peculiar circumstances of this transaction take the case out of that rule, and that the testimony objected to by appellant was admissible upon either one or another of the several questions of estoppel, innocent purchaser, and the purposes, consideration, delivery, surrender, and redelivery of the deed. Oliver contended in his testimony that he and Silliman had a definite oral understanding that Oliver was to take the title, and if Silliman should later on pay his half of the cost of the title and improvements the latter could take a half interest in the property; that when the $15,000 note was executed by both parties Silliman suggested that Oliver execute to him a deed, which Silliman had prepared, conveying to the latter a half interest in the property to show that Silliman had an "equity in this thing," whereupon Oliver told him that he would give him the deed "according to our first agreement or understanding that this deed was to remain in my name until he was able to pay up, but he went on to say that he thought he ought to have something to show that he had an equity in the proposition, so I finally said to him, 'I will give you

a deed to it with this understanding, that this deed is not to be placed on record, or be considered a deed or anything, unless you are able to pay up your part of the $15,000'"; that when the $15,000 became due and had to be paid, Silliman, insolvent and unable to help carry the load, "threw up his hands," surrendered the deed back to Oliver, and so conducted himself as to show he had washed his hands of the transaction, and by his conduct and in writing repeatedly recognized Oliver as the sole owner of the property. It was admitted, too, that Oliver had put nearly $21,000 in cash in the property, and that Silliman was insolvent at the inception and throughout the whole of the transaction. Oliver testified also that Silliman never paid the $5,000 cash consideration recited in the deed, or any part of it, and Silliman himself testified that he had never been able to take care of his interest in the property.

[1] Now, we are, of course, familiar with the rule that parol agreements will not be allowed to destroy, impair, or vary the effect of plain recitals in a deed, and that when the grantor himself delivers a deed to the grantee, it shall automatically become effective in accordance with the purposes plainly expressed therein. But, as we have said, there are a few well-known exceptions to this rule. Parol testimony may be received, for instance, showing that the cash consideration recited in the deed was not in fact paid (Lanier v. Foust, 81 Tex. 186, 16 S. W. 994), and that other or additional consideration than that expressed was contemplated by the parties (Taylor v. Merrill, 64 Tex. 494). So also is it proper to receive testimony of parol agreements upon which a deed is executed or delivered to show that the instrument was in fact intended as a mortgage, or to create a trust and not to pass title, or that it was not executed or delivered by the grantor with the intention that it shall become operative as a conveyance, which last seems to be the contention here of appellee Oliver. Steffian v. Bank, 69 Tex. 513, 6 S. W. 823; McClendon v. Brockett, 32 Tex. Civ. App. 150, 73 S. W. 854; Ivy v. Ivy, 51 Tex. Civ. App. 397, 112 S. W. 110. In the case last cited the following from the Supreme Court of Pennsylvania is quoted with approval:

"The destruction of a written instrument by parol testimony may seem dangerous, and it is so, but the community would be in a still worse condition if it were established as an inflexible rule that, when a man's hand was once got to an instrument, no matter by what means, the doors should be shut against all inquiry."

By his first assignment of error appellant complains of the overruling of his motion for peremptory instruction, and by his second he complains of the admission of the testimony above mentioned. Both assignments are overruled. But we sustain the third and last assignment, in which appellant complains of the adverse peremptory instruction to the jury.

Reversed and remanded.

### On Motion for Rehearing.

[2] It is conceded by appellant Silliman that appellee Oliver expended approximately $21,000 in improving the land involved and protecting the title thereto, and that throughout all the transactions he was rightfully in possession of the land. Silliman, however, sought to recover half of the property without offering to reimburse Oliver for any portion of these expenditures, which were made with Silliman's knowledge, acquiescence, and even procurement, and without which the property would surely have been lost, since Silliman himself was absolutely helpless in the matter. We think these facts clearly put Oliver in the attitude of one who rightfully obtains possession of property by paying the debt of the legal owner, thereby discharging a lien held against the property to secure such debt. In such case the legal owner will not be permitted to recover the possession until he has reimbursed the one already rightfully in such possession. De Guerra v. De Gonzales, 232 S. W. 896, and authorities there cited. Even if every other issue in the case should be resolved in favor of Silliman, it would nevertheless be a travesty upon justice, and a violation of every principle of equity, to permit him to recover the property in dispute without first requiring him to reimburse Oliver.

With this additional suggestion, appellant's and appellees' motions for rehearing are overruled.