**TEXARKANA & F. S. RY. CO. v. BRASS.**
(No. 438–3911.)

(Commission of Appeals of Texas, Section B. June 18, 1924.)

1. Carriers ⬥134—Evidence held to show that parties intended that carrier should be responsible for cotton, and that delivery was intended.

Evidence *held* to show that when carrier issued bills of lading for cotton parties intended that carrier should stand responsible therefor, and that delivery to carrier was intended.

2. Carriers ⬥134—Effect of statute on bill of lading as proof of delivery stated.

Rev. St. art. 713, does not render a bill of lading conclusive proof of delivery, as it only applies "where common carriers receive·goods for ·transportation," and' receipt in bill has only prima facie effect; but, as long as delivery

is not rebutted, the signing of bill of lading containing such receipt is the commencement of the trip.

Error to Court of Civil Appeals of Fifth Supreme Judicial District.

On motion for rehearing. Motion overruled.

For original opinion, see 260 S. W. 828.

STAYTON, J. The case involves the question of whether there is any evidence to negative that, at the time of the fire which destroyed plaintiff's cotton, the defendant carrier had received delivery of the cotton as recited in its bills of lading, and, if so, the further question of whether there is any evidence that relieves the defendant of the prima facie case of negligence established by the fact that defendant did not redeliver the cotton according to its undertaking. The original opinion is reported in 260 S. W. 828.

A motion for rehearing has been filed which, while it does not present any statement, argument, or authority that was not considered by the court on the original hearing, presses many contentions with a becoming emphasis that justifies the extension of the original opinion in some respects.

As counsel say, the law is plain, but its application to this case difficult. However, a reconsideration of the matters presented in the motion leaves this court with the same views.

Some testimony that was not mentioned in the original opinion will be first noticed.

[1] Plaintiff testified that he obtained defendant's bills of lading in order, as he expressed it, "to get my money quicker." He was an exporter, and doubtless was enabled to obtain loans or advances, or to sell his cotton, only upon the issuance of that sort of paper. It seems to be in mind, though not expressed, that its issuance was a mere device for his convenience, and consequently was an accommodation, and without consideration. No point of the sort is raised by the pleadings, and, moreover, plaintiff testified to the effect that the railroad company obtained the shipment through Port Arthur for its own profit; and this is corroborated by the bills of lading and the testimony of defendant's agent (A. Catuna), who added that "in the handling of cotton as in this instance" the defendant sought to secure the legal remuneration for its services. It is argued that the advantages to plaintiff threw some light on the point of whether or not delivery was made. But, as the transaction was a benefit to both shipper and carrier, as plaintiff desired to have his cotton transported from Athens to shipside, and as there is no testimony that plaintiff's purpose with respect to his obtaining money upon the bills was the subject of negotiations with the carrier, the force of the contention is not comprehended. The fact that plaintiff desired

the bills of lading in order to raise money upon them works rather against than in favor of defendant's position; for it will not be presumed that either he or the company desired to profit by any misrepresentation as to the receipt of the cotton as stated in the bills of lading or the apparent responsibility of the carrier as evidenced by them.

Plaintiff testified that he "shipped lots of cotton in January, 1908, over the Texas & New Orleans Railroad from Athens, Tex., which," as he added, "we afterwards exchanged with Mr. A. Catuna at Dallas against bills of lading issued by the Texarkana & Ft. Smith Railway, and I have no doubt that the two bills of lading, one covering 50 bales and one covering 100 bales, were amongst it." Defendant contends that this indicates that there was no intention to deliver the cotton to the latter carrier. But the testimony is thought clearly to raise a reasonable inference to the contrary. This evidence, combined with that just noticed as to plaintiff's purpose in obtaining defendant's bills of lading, seems to be a quite cogent indication that the intention of the parties was that after the issuance of the bills of lading the defendant should stand responsible for the cotton, and that delivery was intended.

[2] The suggestion is advanced that the application made, in the original opinion of R. S. art. 713, has the effect of rendering the bill of lading conclusive proof of delivery. There was no purpose to convey that meaning. The wording of the article clearly shows that the statute has no conclusive effect upon the question of delivery, as it only applies "where common carriers receive goods for transportation." The statute is entirely consistent with the statement that the receipt in a bill of lading has only a prima facie effect, but that, as long as delivery is not rebutted, the signing of a bill of lading containing such a receipt is the commencement of the trip.

The contention is made that the Commission of Appeals on the former submission (110 Tex. 281, 218 S. W. 1040) clearly indicated that, had defendant's answer been sustained by evidence, the court, upon the issue of delivery, would have concurred in the conclusions of the Court of Civil Appeals. But an indication of that nature does not appear from the opinion, especially in view of the fact that the point decided was that the allegations of the answer could not be taken as confessed under the act which required verified denials, because they did not constitute a "special matter of defense in contemplation of the provision of the act."

Several corrections or explanations of the opinion of this court are suggested by the motion.

It is earnestly contended that the opinion does violence to the agreed facts. Only one phase of these facts would seem to call for

further comment—that regarding the movement of the bales remaining in the shipment after the fire. Its purport was not exactly given in the opinion, and for that reason it is now quoted; and the following opinion is substituted upon the particular point. The passage referred to reads:

"After the fire all of the cotton described in the above-mentioned bills of lading, less the 26 bales burned, was loaded from said cotton compress platform by the Texas & New Orleans Railroad Company on its cars and transported over its line from Athens, Tex., to Port Arthur, and there delivered by it to the Texarkana & Ft. Smith Railway Company, which last named company carried same to the port of Port Arthur, and in turn delivered the same to the ship, George Pyman, and then the same was by said ship carried to and delivered at destination."

It is not clear that this agreement sought to cover any considerations of constructive delivery; it seems, rather, that it only sought to account for the actual physical handling and movement of the remaining cotton after the fire. It is, however, very clear that it did not have the effect of negativing a delivery to defendant, before the fire, of the 26 bales of cotton that were burned. The agreement in this respect is carefully worded, and these 26 bales are expressly excepted from it.

This testimony, on the other hand, cannot be offered as a practical construction of the contracts of defendant, because, as has been held, those contracts were unambiguous and needed no construction.

It is not thought that, upon either of the theories mentioned, the agreed facts, as to the handling of the cotton remaining after the fire, had any effect toward rebutting the plaintiff's prima facie showing that the bales that were burned were delivered to defendant before the fire.

If the opinion intimates that the compress platform at which plaintiff's cotton was destroyed was a place designated or maintained by the railroad companies having lines into Athens, it is to that extent in error. The fact simply is "that when the cotton to be shipped from Athens, Tex., was situated on the platform of the cotton compress at that place, it was the custom and practice" of those companies "to receive and load such cotton from that platform."

Another correction that the motion indicates should be made is that there is no evidence to the direct fact that the platform was "near" the railroad yards, as stated in the opinion; but the testimony given by one of the witnesses was, that "a freight train was in the yard going south at the time I discovered the fire, and it had been by the press about 15 minutes."

The opinion stated that the St. Louis & Southwestern Railway Company "did not have spark arresters on its engines." The

fact agreed upon was that such company failed "to exercise ordinary care to equip its said locomotives with such a spark arrester as it was under legal duty to use on same."

The opinion states that the suit was brought against the present defendant in 1908. The record does not exactly disclose this. Just when the suit was filed is not shown, but it is shown that the damage occurred in 1908.

These discrepancies are not considered as having any effect upon either the opinion or the result.

Two decisions that were cited on the original submission and were carefully considered by this court are again urged as decisive of the case. Reconsideration of them and of the entire testimony, as well as of the matters above mentioned, has not served to change the views already expressed.

The case of Amory, Mfg. Co. v. Gulf, C. & S. F. Ry. Co., 89 Tex. 419, 37 S. W. 856, 59 Am. St. Rep. 65, in so far as it may be claimed to be pertinent, holds that a bill of lading exempting a carrier from liability for certain losses while the freight is "in transit," means, when construed most strictly against the carrier, while in motion from one point to another, and does not mean while "in transitu," so as to include the place of delivery before the shipment begins to move. The court in effect held, however, that the duty of the carrier arose while the cotton was on a platform before being loaded into cars; and the decision is favorable to the opinion in the present case.

The case of Texas & Pacific Ry. Co. v. Richmond et al., 94 Tex. 571, 63 S. W. 619, holds that the trial court should not have withdrawn the question of negligence from the jury. The evidence showed that cotton was destroyed by fire from an unexplained cause while in a freight car of the defendant between stations. The testimony plainly showed the following case: The cotton was at all times under cover, and the car was without visible breaks or cracks. The doors were kept cleated, and sealed under the same seals. The engines handling the car were equipped with good spark arresters, and in charge of competent and careful engineers. The car was kept in trains at locations removed not less than 10 cars from the head of the train. There was no way for fire to have been communicated to the cotton. The foregoing was some evidence of care on the part of defendant, and the case rightly should have gone to the jury. In fact, it is difficult to realize what more care could have been used. In the present case, however, there was no evidence of care and no evidence to rebut the presumption of negligence.

What has been said is thought to embrace everything in the motion that appears to be new, or differently argued. In a case as novel as is the one at bar, and in which the

natural and substantial merits are so nearly balanced, it is necessarily a matter of inconvenience and regret to find for either party; but it nevertheless must be done; and in this case we are of the opinion that it must be done in the manner already indicated, and accordingly recommend that the motion for rehearing be overruled.