## MOORE v. WILSON et al.

### No. 14052.

Court of Civil Appeals of Texas. Fort Worth.

March 8, 1940.

Rehearing Denied April 12, 1940.

White & Cogdell, of Fort Worth, and W. S. Moore, of Gainesville, for plaintiff in error.

Cecil Murphy and John W. Culp, both of Gainesville, for defendants in error.

DUNKLIN, Chief Justice.

This suit was instituted by James S. Moore to recover title to an alleged oil and gas lease on 150 acres of land in Cooke County, and for the value of oil and gas removed therefrom.

Two separate groups of individuals were named defendants. The first group, designated lessors, included Mrs. O. Wilson, a widow, and her eight children, some of whom were married daughters, and their husbands were also included in that group.

The second group of defendants, designated lessees, was composed of E. L. Gill and M. L. and O. W. Witherspoon.

According to allegations in plaintiff's petition, on the 14th day of May, 1937, the first group of defendants, as lessors, executed and delivered to plaintiff an oil and gas lease contract and an oil and gas lease in performance of the contract, covering the 150-acre tract of land in controversy. The lease was in the customary form of what is known as Producers 88 Special Texas form, by the terms of which, for a recited consideration of ten dollars cash paid and covenants and agreements therein appearing, the lessors granted, demised and leased to plaintiff the land in controversy for the purpose of exploring and developing the same for oil and gas. The lease

was to continue for one year, and as long thereafter as oil or gas is produced from the land. The lessors were to receive $25 per acre for the contract to be paid out of ⅛th of ⅞ths working interest when produced from the land, and in addition, a royalty of ⅛th of the oil and gas produced. With a further provision that if no well be commenced on or before the 15th day of July, 1937, the lease would terminate, unless continued under certain conditions stated, including payment of rentals, according to further allegations.

The parties to those two instruments agreed that the same be placed in escrow with First State Bank of Gainesville for a period of 60 days, to enable plaintiff to comply with its stipulations and conditions, and if he should comply therewith within that period, the contract and lease would be delivered to plaintiff; otherwise, they would be returned to said lessors. There were further allegations in plaintiff's petition, in substance, as follows: After said contract and lease were executed and delivered to plaintiff, said lessors, by fraudulent acts, procured possession of said contract and lease, without plaintiff's knowledge or consent, and refused to allow same to be placed in escrow in said bank, and still have possession thereof. After execution and delivery to him of the contract and lease, he was ready, willing and able to begin and finish drilling operations within the 60 day period stipulated in the lease, and offered so to do, but the offer was refused.

An alleged copy of the lease was attached to the petition as a part thereof.

As against the second group of defendants, it was alleged that they acquired from the first group a purported oil and gas lease on the same land, which is invalid as against plaintiff's suit, because the same was acquired with full knowledge of plaintiff's prior rights, as above alleged; and acting under said purported lease, they have developed said land for oil and gas, by drilling wells, from which they have produced and appropriated oil and gas, to plaintiff's damage in the sum of $25,000, for which plaintiff sought a recovery, on the theory of wrongful conversion, as well as for cancellation of the lease, as a cloud upon plaintiff's title to the lease, which he sought to establish.

The first group of defendants filed answers which included general demurrers, numerous special exceptions to plaintiff's petition and a general denial; followed by a duly verified special answer, including allegations that no consideration was paid by plaintiff for the alleged contract and lease; and further, that neither the lease contract nor the alleged lease was ever delivered to plaintiff by them or by any one with their authority or consent. In that connection, they alleged that on or about May 15th, 1937, they did sign and acknowledge an oil and gas lease on the land in controversy, together with plaintiff's drilling contract, but did so with the distinct understanding and agreement with plaintiff that defendants would have the privilege to submit those instruments to their attorney, Hon. John W. Culp, for his examination and approval, and should he approve same, then they were to be deposited in escrow with the First State Bank of Gainesville, together with a deposit by plaintiff of a sum of money sufficient to guarantee the drilling of the first well to the contract depth, the drilling of which was to begin within 60 days after said escrow deposit, and the money deposited to remain in the bank until the completion of the well. And if their said attorney should not approve said instruments, or should plaintiff fail to make said money deposit in the bank at the time said instruments were ready to be placed therein in escrow, then and in either of said events, said lease and lease contract were not to be delivered to plaintiff or in escrow with the bank and would not be binding on defendants. With further allegations of refusal of their said attorney to approve the lease and contract; failure of plaintiff to make said deposit of money with said bank; and that at no time has plaintiff been financially able to drill the well to the required depth of 1,200 feet, by reason of his insolvency.

The second group of defendants filed an answer, adopting the pleadings of the first group; with further allegations that they acquired their lease from their said codefendants, in good faith, paying a valuable consideration therefor, all without notice of plaintiff's claim of a lease on the same land, with prayer that plaintiff's said claim be removed as a cloud upon their title.

In his supplemental petition, plaintiff presented a general and special exception to the defendants' special pleading, just noted, a general denial and a special pleading of an agreement by all parties thereto that both the contract for lease and the lease would be placed in escrow with D. W.

Crawford for the purpose of having him place the same in said bank on the following day, but immediately thereafter, without plaintiff's knowledge or consent, defendants induced Crawford to turn over the instruments to defendant, Mrs. O. Wilson, for the purpose, on her part, of having her attorney, Hon. J. W. Culp, examine them, which Mrs. O. Wilson failed to do; and plaintiff, acting under the belief that said instruments had been deposited in escrow in said bank, incurred great expense in preparing to drill said land for oil, and would have begun drilling and developed the lease for oil production, in accordance with the terms of his said lease, at a profit to him of $25,000.

The truth of those special pleadings was put in issue by defendants' pleadings, filed in reply thereto.

Following are special issues submitted to the jury, with their findings thereon:

"No. 1. Do you find from a preponderance of the evidence that after the lease and drilling contract in question were signed and acknowledged by Mrs. Wilson and the other lessors the same were, by agreement of the parties, handed to Dwight Crawford to be escrowed in the First State Bank? Answer yes or no. Answer: No.

"No. 2. Do you find from a preponderance of the evidence that the defendants, lessors, signed and acknowledged the contract and lease with the understanding that they were not to become effective until Mr. Moore deposited a sufficient amount of money in the escrow bank to guarantee the drilling of the first well? Answer yes or no. Answer: Yes.

"No. 3. Do you find from a preponderance of the evidence that the defendants, Mrs. O. Wilson, Mr. and Mrs. Sparkman, Clarence Wilson, Mrs. Johnson, Mrs. Terry and Mrs. Womack, signed and acknowledged the contract and lease with the understanding that they should not become effective unless Mr. Culp approved the instruments? Answer yes or no. Answer: Yes.

"No. 4. What do you find from a preponderance of the evidence to be the reasonable cash market value of an oil and gas lease on the 150 acre Wilson tract where the land owners are receiving ⅛ of the oil and gas and $25.00 per acre oil payment out of ⅒ of the ⅞ working interest? Answer giving amount in dollars and cents. Answer: $1500.00."

On that verdict judgment was rendered that plaintiff take nothing of any of the defendants; that the second group of defendants named above have a valid and subsisting oil and gas lease on the land in controversy, acquired by them from the first group of defendants, and that all clouds cast upon their said lease by the claims asserted by plaintiff in this suit be removed. From that judgment plaintiff has prosecuted this writ of error.

By three different propositions, which are the only ones presented here, complaint is made of the admission of parol testimony in support of the allegations in defendants' answers, which were sustained by the findings of the jury, in answer to issues Nos. 2 and 3, over plaintiff's objections that, in the absence of allegations and proof of fraud of plaintiff, inducing the execution by defendants of the lease contract annd lease alleged by plaintiff, such testimony was inadmissible, because it tended to vary, add to or contradict those instruments.

In support of those propositions, plaintiff in error has cited this excerpt from 17 Tex.Jur., sect. 354, p. 794: "Where parties have reduced to writing that which appears upon its face to be a complete and certain agreement, importing a legal obligation, the court will, in the absence of fraud, accident or mistake, conclusively presume that the writing contains the whole agreement between them; and parol evidence of prior or contemporaneous negotiations, conversations, representations or statements will not be received for the purpose of adding to or varying the written instrument. Under this rule it is not permissible to show that an oral agreement was made at the time of the execution of a writing, that the instrument should have another and different effect than that imported by its terms, * * *."

Numerous decisions are cited announcing and applying that familiar rule, such as Belcher v. Mulhall & Scaling, 57 Tex. 17; Self v. King, 28 Tex. 552; Texarkana & F. S. Ry. Co. v. Brass, Tex.Com.App., 262 S. W. 737; Jackson v. Pure Oil Operating Co., Tex.Civ.App., 217 S.W. 959; Cottingham v. Harrison, Tex.Civ.App., 89 S.W.2d 255; Southwestern Life Ins. Co. v. Brooks, Tex.Civ.App., 89 S.W.2d 1059.

That parol evidence rule is applicable only after a contract in writing or deed of conveyance has been legally executed and delivered. It has no application in the determination of the issue whether or not there was a legal delivery of the in-

strument in the first instance so as to give it the standing of a legally binding contract or deed, unless set aside or modified on the ground of fraud, accident or mutual mistake, inducing its execution.

In Steffian v. Milmo Nat'l. Bank, 69 Tex. 513, 6 S.W. 823, 824, this was said, in opinion by Justice Gaines:

"It is elementary law that the delivery of a deed is requisite to its validity as a conveyance. To take effect, it is quite as necessary that it should be delivered as, that it should be signed. To complete a delivery in its legal sense, two elements are also essential. The instrument must not only be placed within the control of the grantee, but this must be done by the grantor with the intention that it shall become operative as a conveyance.

"It follows from these first principles that an instrument which passes into the possession of the grantee, without such intention on part of the grantor, is wholly inoperative; and that a purchaser from the former acquires in law no title to the property which it purports to convey."

That statement of the rule has been quoted and applied in numerous decisions, including Cox v. Payne, 107 Tex. 115, 174 S.W. 817; Coleman v. Easton, Tex.Com. App., 249 S.W. 200, 202, and in the latter case this was said:

"The cases all hold that the question of delivery is one of intention, as manifested by the words and acts of the grantor, and there is no delivery unless there exists an intention that the deed is to pass title immediately to the land conveyed. In the case of Taylor v. Sanford, 108 Tex. 345, 193 S.W. [661], 662, 5 A.L.R. 1660, Judge Phillips makes it clear that the manual delivery of the instrument, or the dominion and control over same, is of secondary importance, and the chief thing is the grantor's intention. As very concisely stated by him:

" 'If the instrument be so disposed of by him, whatever his action, as to clearly evince an intention on his part that it shall have effect as a conveyance, it is a sufficient delivery.' "

We quote the following from Thomason v. Berry, Tex.Com.App., 276 S.W. 185, 186: "A contract is not effected until there has been a delivery, either actual or constructive, and if the instrument in controversy was delivered upon the express condition that it was not to be binding as an instru-

ment until signed by De Pascale, then the failure of De Pascale to sign destroys the very existence of the contract, and it may be shown in defense. Steffian v. Bank, 69 Tex. 513, 6 S.W. [823], 824; Coleman v. Easton (Tex.Com.App.) 249 S.W. 200; Morris v. Logan (Tex.Civ.App.) 273 S.W. 1019."

In Morris v. Logan, Tex.Civ.App., 273 S. W. 1019, writ refused this was said: "A written contract, be it deed or note or otherwise, does not become effective until it is delivered to the grantee, or some one for him, for that purpose and with that intention. If it is delivered into the possession of the grantee upon a special condition, as in this case, it is but a conditional delivery; and such delivery does not become absolute, and the instrument does not become effective, until the happening of the contingency provided for. In such case it is proper to show the stipulated condition, to which end the true facts and circumstances evidencing the intention and agreement of the parties may be shown by parol evidence, and when thus ascertained will be given effect. Steffian v. Bank, 69 Tex. 513 [6 S.W. 823]; Coleman v. Easton (Tex.Com.App.) 249 S.W. 200; Silliman v. Oliver (Tex.Civ.App.) 233 S. W. 867 [Id., Tex.Civ.App.], 247 S.W. [902], 903 (writ refused)."

See, also, McCartney v. McCartney, 93 Tex. 359, 55 S.W. 310; Skeen v. Skeen, Tex.Civ.App., 204 S.W. 379; Roddy v. Citizens' State Bank of Copeville, Tex.Civ. App., 11 S.W.2d 652; Holt v. Gordon, Tex.Civ.App., 176 S.W. 902; Farrar v. Holt, Tex.Civ.App., 178 S.W. 618.

As shown by plaintiff's pleadings and his testimony, the alleged contract and lease were to be placed in the bank in escrow for future delivery to him. According to his testimony, at the time the lease was handed to him, he did not have the money necessary to drill a well within the 60 day period, as required by the terms of the lease, and it was necessary for him to procure the money from another person, but could not do so until the lease was first deposited in escrow with the bank; and after the lease was handed to him by Mrs. O. Wilson at her home, he handed it back to her, with the request she have D. W. Crawford place it in escrow with the bank, which was never done, and by reason thereof he was unable to drill a well within the required period of time, as

a result of which he suffered damages in the sum of $25,000.

His testimony, in connection with that of Mrs. O. Wilson and other members of her family, who executed the lease, fully supports the findings of the jury in answer to issues Nos. 2 and 3. And under the decisions last cited, that testimony of defendants was admissible.

Accordingly, all assignments of error are overruled and the judgment of the trial court is in all respects affirmed.