ASHLEY v. ASHLEY.

Opinion delivered January 17, 1910.

GIFT CAUSA MORTIS—DELIVERY.—Deeds and bills of sale executed by one to his heirs in anticipation of death and delivered to one of the grantees to be placed in a chest of the grantor, to be delivered at the grantor's death, but subject to his dominion as long as he lived, were ineffective to pass title at his death.

Appeal from Calhoun Circuit Court; *George W. Hays,* Judge; reversed.

*Thornton & Thornton* and *Powell & Taylor,* for appellant.

1. The instruments, executed in the form of deeds and bills of sale, are testamentary in character, the surrounding circumstances being taken into consideration in ascertaining the intention of the maker. 50 Ark. 367; 74 *Id.* 104; 30 A. & E. Enc. of L. 576; 101 S. W. 42; 66 S. W. 536; 17 N. W. 522; 76 N. W. 411; 15 N. E. 42; 69 N. E. 892; 80 N. E. 1086; 41 N. E. 1007; 84 N. E. 638; 75 S. W. 677; 58 S. W. 318; 86 Ill. 616; 153 Ill. 636.

2. If the instruments are deeds and bills of sale, they are void for want of delivery. 75 S. W. 677; 84 N. E. 638; 41 N. E. 1007; 76 N. E. 151; 30 N. E. 1041; 36 N. E. 958; 88 N. E. 231; 77 Ark. 89.

3. If testamentary in character, the instruments are inoperative for noncompliance with the statute of wills. 75 S. W. 677; 80 N. W. 1086; 88 N. E. 231.

*Poole & Whitehead,* for appellees.

1. The instruments were deeds absolute. 74 Ark. 115; 146 Ind. 379; 50 Ark. 367; 75 *Id.* 321.

2. The delivery of the instruments to Chas. Ashley, to be by him placed in a chest until the grantor's death and then delivered to the grantees, was sufficient to pass the title, acceptance being presumed. 9 A. & E. Enc. of L. 154; 2 Jones on Real Property and Conveyancing, § § 1217-1224; 5 A. & E. Enc. of L. 448; 51 Ark. 530; 77 *Id.* 92; 82 *Id.* 50; 14 Ohio 308; 38 Miss. 723; 48 Miss. 710; 199 Ill. 454; 161 Ind. 56; 89 N. W. 556.

BATTLE J. Upon an agreement in writing entered into by the parties to this action certain issues hereinafter appearing were submitted to and decided by the Calhoun Circuit Court. Kirby's Digest, § § 6280-6282.

The following instruments of writing were signed and acknowledged by Pink Ashley in his lifetime:

"Warranty Deed.

"Know All Men by These Presents:

"That I, Pink Ashley, for and in consideration of the sum of three hundred ($300.00) dollars, to me paid by Charlie and Will Ashley, receipt of which is hereby acknowledged, do hereby grant, bargain, sell and convey unto the said Charlie and Will

Ashley, and unto their heirs and assigns forever, the following lands, lying in the county of Calhoun and State of Arkansas, to-wit: The S. E. ¼ of S. W. ¼ of the S. E. ¼ of section nineteen (19), all in township fourteen south, range fifteen (15) west, containing 10 acres. Also the south ¼ of the N. E. ¼ of the N. E. ¼, the S. E. ¼ of the N. E. ¼, E. ½ of the S. E. ¼, all in section fourteen (14) south of range fifteen (15) west, containing in all 140 acres, more or less, at my death. To have and to hold the same unto the said Charlie and Will Ashley, and unto their heirs and assigns forever, with all appurtenances thereunto belonging. I hereby covenant with the said Charlie and Will Ashley that I will forever warrant and defend the title to said lands against all lawful claims whatever.

"Witness our hands and seals on this 6th day of September, 1906.                 his

(Seal)                      "Pink x Ashley."
                                  mark

"Warranty Deed.

"Know All Men by These Presents:

"That I, Pink Ashley, for and in consideration of the sum of ($100.00) one hundred dollars, to me paid by Dora Strong, receipt of which is hereby acknowledged, do hereby grant, bar-· gain, sell and convey unto the said Dora Strong, and unto her heirs and assigns forever, the following lands, lying in the county of Calhoun and State of Arkansas, towit: the S. E. ¼ of the S. W. ¼ of section five, township fourteen (14) south, range fifteen (15) west, containing 40 acres, less one acre in the south-east corner so long as used for school purposes. Also less as much pine timber as Charlie or I may need, for building purposes, at my death.. To have and to hold the same unto the said Dora Strong and unto her heirs and assigns forever, with all appurtenances thereunto belonging. And I hereby covenant with the said Dora Strong that I will forever warrant and defend the title to said lands against all lawful claims whatever. ·

"Witness our hands and seals on this 6th day of September, 1906.                          his

(Seal)                      "Pink x Ashley."
                                  mark

"Bill of Sale.

"9-6-06, Locust Bayou, Arkansas.

"For and in consideration of seventy-five dollars paid to

me by Will Ashley, receipt of which is hereby acknowledged, I do hereby grant, bargain and sell unto Will Ashley the following stock, towit: One claybank mare about six years ot age, 14 hands high, one black cow and yearling, marked crop and split in each ear, branded with P on left shoulder and hip. The said Will Ashley is to have and to hold the above named stock for the amount named at my death.

　　　　　　　　　　　　　　　　　　　　his
　　　　　　　　　　　　　　　　"Pink x Ashley."
"Witnesses:　　　　　　　　　　　　　mark

　　"John Bush.
　　　his
　　"H. x Bowie."
　　　mark

　　　　　　　　　　"Bill of Sale.

　　"For and in consideration of ($20.00) twenty dollars to me in hand paid by Dora Strong, receipt of which is hereby acknowledged, I do hereby grant and sell to Dora Strong, one brown cow and calf, cow marked crop and split in each ear, also branded on left shoulder and hip with letter P, to have and to hold same for the above named at my death.

　　　　　　　　　　　　　　　　　　　his
　　　　　　　　　　　　　　　　"Pink x Ashley. -
"Witnesses:　　　　　　　　　　　　mark

　　"John Bush
　　　his
　　"H. x Bowie."
　　　mark

　　Did these deeds and bills of sale ever become operative? The circuit court held that they did.

　　The issues in the case were submitted to the court upon the deeds, acknowledgments of the same, and the bills of sale, and an agreed statement in writing as to the testimony of D. R. Furr and Charles Ashley in a certain matter before the Calhoun Probate Court, which is as follows:

　　D. R. Furr, a justice of the peace, testified before said court as follows:

　　"Pink Ashley, some two weeks previous to his death, but while of sound mind and possessed of all his reasoning faculties,

sent 'for the said D. R. Furr to come to his home, and after arriving there the said Pink Ashley stated to the said D. R. Furr that he desired to make a disposition of his property between his respective heirs that there might not be any trouble or litigation after his death; that the said Furr advised him as to his real property it would be necessary to make and execute deeds to his respective heirs to that portion of the land that he desired them to have; that said Ashley made a division of his land between each of his heirs, and that the said Furr prepared deeds to the same land, and, after said deeds were signed, said Furr took the acknowledgment thereto, and that, as to the personal property, bills of sale were prepared by the said Furr, signed by the said Ashley and acknowledged by the said Furr, and that after said deeds and bills of sale had been signed and acknowledged and turned over to the said Ashley by the said Furr the said Pink Ashley, deceased, handed the same to Chas. Ashley, and said to him to place the deeds and bills of sale in his chest, and that immediately after his death said deeds and bills of sale be delivered to his respective heirs to whom they had been executed. That Chas. Ashley testified before the probate court at the same time and place that his father, Pink Ashley, handed him the deeds and bills of sale, and told him to place them in his chest, but that he never gave him any direction to deliver them to the heirs of said estate as testified to by Furr, and that he had never delivered them to any one until filed as evidence in this case with the clerk, and that immediately after the death of his father he took out letters of administration on said estate."

The deeds and bills of sale mentioned in the testimony set out above are the deeds and bills of sale copied in this opinion. In the first deed Charlie and Will Ashley are named as grantees, and in the second Dora Strong, and in the bills of sale Will Ashley and Dora Strong. They were executed by Pink Ashley about two weeks before his death, and were intended to be a division and conveyance of his property to and between his prospective heirs, but were not to operate as a will. *Bunch* v. *Nicks,* 50 Ark. 367. They were not delivered to any one for the heirs, but were handed to Charles Ashley, not to hold, but to be placed in a certain chest (whether of Charles or Pink Ash-

ley is not specified, but the presumption is of the latter), and there to remain until his death, when the instruments were to be delivered to those named therein as grantees. The instruments were executed in anticipation of his death, and were obviously not intended to become effective in the event he recovered. Charles Ashley was not authorized to possess or exercise any control over them in Pink Ashley's lifetime. They were to operate as a division of his estate, in the event he died, and were subject to his dominion so long as he lived. They were not delivered in his lifetime, and never took effect or became operative. *Russell* v. *May,* 77 Ark. 89; *LaCotts* v. *Quertermous,* 84 Ark. 610.

Judgment reversed and the cause remanded with directions to the court to enter a judgment in accordance with this opinion.