### COLEMAN et al. v. EASTON.*
(No. 403–3749.)

(Commission of Appeals of Texas, Section A. March 21, 1923.)

**1. Deeds ⟾56(2)—Delivery without express reservations or conditions passes title presently, regardless of intent dependent upon contingency.**

Where a grantor delivers his deed to the grantee, and the same contains no express reservations or conditions, even though it is his intention that it is not to become operative until the happening of a certain contingency, such delivery is effectual to pass title presently.

**2. Deeds ⟾208(3)—Finding that husband's deed to wife was never delivered, sustained.**

In a suit to cancel a deed given by a husband to his wife and placed in her possession for safe-keeping, but without intent the title should pass before the husband's death, evidence *held* to sustain a finding that there was no delivery.

**3. Appeal and error ⟾1056(2)—Exclusion of evidence harmless, where immaterial to issues.**

Refusal to admit in evidence portion of a judgment in another suit, or of abandoned pleadings, if error, is not prejudicial, where such evidence is not material to the issues.

Error to Court of Civil Appeals of Fifth Supreme Judicial District.

Action by F. G. Coleman against Mrs. Kate Easton, with Michael Hanna, impleaded; defendant seeking a recovery from plaintiff and from the party impleaded, and the party impleaded claiming a balance due from plaintiff, and seeking cancellation of a deed executed by him to defendant, for which relief plaintiff also prayed. A judgment for plaintiff for title and possession, subject to a lien, and for cancellation of the deed was reversed by the Court of Civil Appeals, which render-

ed judgment for defendant against plaintiff and the party impleaded, and against plaintiff for rent, and for plaintiff against defendant for a fixed amount, less a credit, establishing a lien securing plaintiff in the payment of the balance (236 S. W. 1001), and plaintiff and the party impleaded bring error. Judgment of Court of Civil Appeals reversed, and that of district court affirmed.

J. H. Randell, of Denison, McReynolds & Hay, of Sherman, and W. S. Pearson, of Denison, for plaintiffs in error.

Wolfe, Freeman & Wolfe, of Sherman, and Reasoner & Reasoner, of Denison, for defendant in error.

GERMAN, J. As plaintiff F. G. Coleman brought this suit in the district court of Grayson county, Tex., against Mrs. Kate Easton, to recover possession of 40 acres of land, and to remove cloud from the title to same. Mrs. Easton impleaded Michael Hanna and sought a recovery of the land from him and from Coleman, as well as judgment for rents. Coleman then proceeded against Michael Hanna and Mrs. Easton, claiming the land under a contract of purchase made with Hanna, and under a sheriff's deed made by virtue of a judgment foreclosing a deed of trust lien given by Hanna on the land. Hanna answered, admitting the contract between him and Coleman, claiming a balance of purchase money due, and as against Mrs. Easton sought to set aside and cancel a deed executed by him to her about March 20, 1918. Coleman also joined in asking a cancellation of this deed, it being claimed that same was not intended to vest title in Mrs. Easton to the 40 acres of land in controversy, and there was no legal delivery of the deed. At the time the deed was made, Michael Hanna and Mrs. Kate Easton were husband and wife. The entire controversy was waged over two questions relating to this deed: First, the legal effect of such instrument, as to whether it was an absolute conveyance, or only testamentary in its character; and, second, whether there was a legal delivery of the deed.

As we view the case, there is no doubt about the true legal effect of the instrument, and the only question left for determination is whether or not there was a delivery of the deed by Michael Hanna to Kate Hanna, who is now Mrs. Kate Easton.

In response to special issues, the jury found, among other things, the following: That Michael Hanna, at the time he handed the deed to Kate Hanna, did not intend to give the land to her; that he did not intend to part with his title and convey it to her; that he did not intend to part with his control over the deed; that he did intend to retain control over same; that it was understood and agreed that he reserved the right to revoke and cancel the instrument if he de-

sired; that it was agreed the instrument was not to be recorded during his life; and that Kate Hanna violated her agreement and had the instrument recorded without the knowledge or consent of Michael Hanna.

The trial court rendered judgment in favor of Coleman against Hanna and Mrs. Easton for title and possession of the land, subject to a lien in favor of Hanna for $3,550, being the unpaid balance of the purchase money; and further decreed a cancellation of the instrument executed by Hanna to Mrs. Easton March 20, 1918, divesting all title out of her and vesting it in Coleman, subject to the lien for the purchase money due by him to Hanna.

The honorable Court of Civil Appeals found that the evidence in the case showed, as a matter of law, a delivery of the deed by Michael Hanna to Mrs. Hanna, and reversed the judgment of the district court, rendering judgment in favor of Mrs. Easton against Hanna and Coleman for the land, and against Coleman for $419 rent; also in favor of Coleman against Mrs. Easton for $1,450, the amount paid in satisfaction of the deed of trust lien, less credit for the $419, and establishing a lien against the land to secure Coleman in payment of the balance. 236 S. W. 1001.

[1] The Supreme Court was inclined to differ with the Court of Civil Appeals in the holding that there was a delivery of the deed, as a matter of law, and it is to that question we direct our attention. The instrument executed by Michael Hanna was a general warranty deed, reciting a consideration of love and affection, and other good and valuable considerations, and contained no conditions, reservations, or limitations. If delivered, the deed had the effect to vest title to the land in Mrs. Easton immediately. The rule is well settled that where a grantor delivers his deed to the grantee, and the same contains no express reservations or conditions, even though it is his intention that it is not to become operative until the happening of a certain contingency, such delivery is effectual to pass title presently. There are two grounds upon which this conclusion is based: First, upon the well-known rule of evidence that parol testimony is not admissible to vary the terms of a written instrument; and, second, that such a delivery is an attempt to deliver the deed in escrow to the grantee, which cannot be done, for delivery to a third person is essential to an escrow. Holt v. Gordon, 107 Tex. 137, 174 S. W. 1097; Paris Grocery Co. v. Burks, 101 Tex. 107, 105 S. W. 174; McClendon v. Brockett, 32 Tex. Civ. App. 150, 73 S. W. 855.

It is apparent from all of the testimony that Michael Hanna intended that the instrument executed by him should take effect after his death as a will, but, if the same was delivered, his intention was defeated, because the deed was absolute and unconditional, and its plain terms could not be changed by showing that it was a will, or was to take effect after his death.

[2] The principle announced above is based upon a delivery of the deed. Instead of the evidence in this case showing a delivery, as a matter of law, we think the question was one to be submitted to the jury, and are of the opinion that their finding that there was no delivery of the deed by Michael Hanna to Kate Easton is amply warranted by the proof. With reference to the execution and delivery of the instrument, Michael Hanna testified as follows:

"I was married to the defendant Mrs. Kate Easton, on the 16th day of March, 1918. She was living out on her ranch when we were married. After we were married we went to living on her farm. After we were married we had conversations as to where we would live. Our conversation was that we proposed to live on the 40 acres as our home in our old days. She said she had a good man to run her place. She said my 40 acres would grow fruit, and that she had tried growing fruit on her place, and could not raise it, and she said on my place we would be close to Denison, and we would make it our home. She said she had a good man that would rent her farm for five years and that we would build a five-room house on my place and live there the rest of our days. A few days after we were married she came in the room with a will in her hand and says: 'This is my will.' She did not read it all, but read part of it. I asked her who her administrator was, and she said Mr. Fowler. I said, 'You are going to make a new will; I suppose you will remember me in it,' and she said, 'What other reason would I have for making a will?' I said, 'That reminds me, I will make a will, and, if I possibly can, will make it stronger than a will to keep that scoundrel from getting a cent.' I referred to my son. I had told her about the conduct of my son prior to that time. I told her that he was a spendthrift and a gambler. Up to the time I had the document prepared which I gave to my wife, and for a month after that, she treated me kindly. She got all my confidence. After I had that conversation with her I had the instrument prepared by Mr. Wood. * * * That was after we had the conversation about her will and where we would live. I gave Mr. Wood instructions about the kind of an instrument I wanted prepared. Mr. Wood afterwards prepared the instrument, and after he prepared it I signed it. It was probably two days after I first saw Mr. Wood, and I asked him to prepare the instrument until I went back and signed it. I told Mr. Wood that about day after tomorrow we would be in, and he said he would have it all ready for me. The defendant, Mrs. Kate Easton, went to Mr. Wood's office with me after the instrument was prepared. I introduced her to Mr. Wood. Mr. Wood handed me the deed, and I put it in my coat pocket, and we walked out. * * * Mrs. Easton, her daughter, and I walked across the street to the creamery where she sells cream. * * * The car was standing there, and we were about ready to go home, and I had the instrument

hanging out of my pocket, and she had a satchel, and I handed it to her and told her to put it in her satchel; that it might blow out of my pocket on the road. She put it in her satchel, as I requested. When I got home I was sitting on the side of the bed, and she opened the satchel, and handed the instrument to me. I says: 'Kate, put them among my papers in that bureau. This is a will, but it is stronger than a will. When you bury me, and we live together good and nice, that place is yours, but if we agree to disagree and there is a separation, will you give it back to me?' She says: 'I certainly will.' That is all. She was standing a foot and a half or two feet from the bureau. The instrument was placed in the bureau where I had my clothes and other papers. I told her to place it with my other papers. The bureau drawer where it was placed was always unlocked. I never bothered my papers until she came over to Sherman and came home and told me she wanted to scratch a line off the deed and stamp it, and said it would save me some money. I never saw this (the deed) again until I saw it in court. I made a search for it afterwards to see if it was where she had put it under my direction. I searched through all the furniture that had drawers in it except one center table, and it was locked. She was gone the day I made the search. * * * Two or three days after I told her to put the instrument away she wanted me to scratch out a line in it and stamp it. I do not mean two or three days, but two or three weeks. I afterwards made a search for the instrument and couldn't find it. When I gave her the instrument it was not to go on record. After I executed the instrument, and it was put away under the circumstances I have detailed, the defendant, Mrs. Kate Easton, was very unkind to me. I left her because of her bad treatment of me. * * * We agreed and she understood it was not to go on record until after I was dead. She asked me if it was a will why I did not leave it in the bank. She thought it would be safer in the bank. I asked her at the house once or twice in town to return the instrument to me. She refused to give it back to me."

The principle announced by Judge Gaines in Steffian v. Bank, 69 Tex. 518, 6 S. W. 824, has been the basis of many decisions by our courts since that time. It is as follows:

"It is elementary law that the delivery of a deed is requisite to its validity as a conveyance. To take effect, it is quite as necessary that it should be delivered as that it should be signed. To complete a delivery in its legal sense, two elements are also essential: The instrument must not only be placed within the control of grantee, but this must be done by the grantor with the intention that it should become operative as a conveyance."

The cases all hold that the question of delivery is one of intention, as manifested by the words and acts of the grantor, and there is no delivery unless there exists an intention that the deed is to pass title immediately to the land conveyed. In the case of Taylor v. Sanford, 108 Tex. 345, 193 S. W. 662, 5 A.

L. R. 1660, Judge Phillips makes it clear that the manual delivery of the instrument, or the dominion and control over same, is of secondary importance, and the chief thing is the grantor's intention. As very concisely stated by him:

"If the instrument be so disposed of by him, whatever his action, as to clearly evince an intention on his part that it shall have effect as a conveyance, it is a sufficient delivery."

It is not necessary to discuss the testimony in full, but a careful study of the statement set out above leads to the conclusion that Michael Hanna, at the time he handed the deed to his wife, did not intend to part with the control of same, with the intention that it should become presently operative as a conveyance; and therefore there was no legal delivery of such deed, as a matter of law. The issue was very properly submitted to the jury. In view of their finding, we think the principles announced by the Supreme Court in the case of McCartney v. McCartney, 93 Tex. 363, 55 S. W. 311, peculiarly applicable here. For this reason we quote therefrom the following:

"We are of the opinion that the question whether or not the deeds, or either of them, were executed by plaintiff with intent thereby to pass title should have been submitted to the jury. The issue is upon the execution of the instruments and not as to their effect, if executed, and hence the decision in Lott v. Kaiser, 61 Texas, 665, and others, stating the proposition that parol evidence is not admissible to show that a deed, admitted to have been completely executed and delivered, was not intended to pass title as it purports to do, have no application. Nor does the proposition apply, that when a grantor has actually delivered his deed to the grantee, parol evidence will not be received to show that it was delivered as an escrow. That proposition rests upon an actual delivery to the grantee named in the deed, and holds that when such delivery has taken place, the deed defines its purpose and cannot be contradicted. While there was some evidence in this case tending to show actual delivery, it was contradicted, and it cannot be taken as conclusively established that such delivery was made. The action of the trial court can, therefore, only be upheld by evidence showing beyond dispute that enough was done to give effect to the deeds, or one of them, otherwise than by actual delivery. That other acts of the grantor than actual delivery of the deed to the grantee may evince his intent to then make the deed effectual to pass title is very true; but to have this effect, such intent must appear from the acts; and, to authorize the court to take the question of its existence from the jury, it must appear so clearly that rational minds cannot differ about it. And, since the thing to be proved, in the absence of actual delivery, is the intention to make the deed operate to convey title, any evidence which tends to prove or disprove such intention must be considered, and particular acts relied on to

prove it are only evidences, and may be explained or rebutted.

"The present parties being husband and wife and their relation giving to the husband custody of his wife's title papers and the management of her property, a deed executed by him to her and intended to invest her with title need not be actually put into her possession or out of his, but its retention by him for her would be a sufficient delivery. But the deed has such effect only where the intention exists. Brown v. Brown, 61 Tex. 56. That case holds that the signing of the deed in the presence of witnesses and retention of possession of it by the husband is sufficient evidence of the intent to pass the title, 'if nothing appears to the contrary'; the criterion by which to determine whether or not the title passes being the intention of the grantor of which the acts stated are only evidence. But where there is other evidence tending to disprove such intent and to show a different one, the question as to the intention of the grantor is, of course, one to be solved by the jury upon consideration of all the circumstances.

"There can be no doubt that the acts done by plaintiff, the signing of the deeds and reading them to his wife, and the subsequent acknowledgment and recording of that of 1888, are evidences tending to show the intent to convey title; but none of them are made conclusive proof of such intent by any rule of law. Their effect as evidence of intent may be rebutted, and, there being other evidence tending to show that they were done not with intent to pass title but for another purpose, an issue of fact was raised for the decision of the jury."

For a statement of the general principles with reference to delivery of deeds in cases where the facts were somewhat similar to the facts in this case, we refer to the following: Cox v. Payne, 107 Tex. 115, 174 S. W. 817; Aggers v. Blackburn (Tex. Civ. App.) 230 S. W. 424; Eckert v. Stewart (Tex. Civ. App.) 207 S. W. 317; Walker v. Nix, 25 Tex. Civ. App. 596, 64 S. W. 73; Bray v. Bray, 132 Ark. 438, 201 S. W. 281; Ball v. Sandlin, 176 Ky. 537, 195 S. W. 1089; Justice v. Peters, 168 Ky. 583, 182 S. W. 611; Coles v. Belford, 289 Mo. 97, 232 S. W. 728; Bunn v. Stuart, 183 Mo. 375, 81 S. W. 1091; Ashley v. Ashley, 93 Ark. 324, 124 S. W. 778.

[3] Defendant in error, who was appellant in the Court of Civil Appeals, assigned as error the action of the trial court in refusing to admit in evidence the whole of the judgment in the divorce suit between Michael Hanna and herself, the court having admitted that part of the judgment showing that a decree of divorce had been rendered. We are unable to see how this could be of material importance in determining the question of delivery of the deed, which was the controlling issue, and there was no error in this particular.

Defendant in error also complains that the trial court erred in failing to admit in evidence part of an abandoned pleading filed by Michael Hanna, containing, along with various defensive allegations, a disclaimer. It is apparent that this part of the pleading is to be construed in connection with the rights of the parties under the contract of sale and purchase between Hanna and Coleman; and so construed, while the same was perhaps admissible, it has no appreciable bearing upon the issue of the delivery of the deed; and the failure of the trial court to admit such abandoned pleading is not reversible error.

It follows that the Court of Civil Appeals was in error in reversing and rendering the judgment, and we therefore recommend that its judgment be reversed, and the judgment of the district court be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.